Mr. Justice FIELD
 

 delivered the opinion of the court.
 

 This was an action to try the title to a tract of land situated in the County of Harrison, in the State of Texas.
 

 The plaintiff relied for recovery upon title derived under a grant from the Governor of Coahuila and Texas, made whilst Texas was a province of Mexico. The defendant rested his defence upon the invalidity of the grant in question, and this invalidity was asserted upon the admitted fact that the land it embraces was situated, at the time the grant was made, within the twenty frontier leagues bordering on the United States, and the absence of any evidence tending to show the assent to the grant, or its approval by the national executive of the republic. The court held the grant, without such assent or approval, to be illegal and void, and excluded it from the jury. The ruling in this respect constitutes the only error assigned, which is properly before us for consideration.
 

 The irregularities in the record mentioned by counsel we cannot notice, as they do not constitute the ground of any alleged error.
 

 The absence of the signature of the judge of the court to
 
 *202
 
 the hill of exceptions is not made the subject of objection by the parties, and we hence infer that its omission was a mere clerical error.
 

 The doctrine, that prior possession is sufficient evidence of title to maintain the action against a mere intruder and trespasser, we do not find at all controverted or doubted by the court below.
 

 The only question presented by the bill of exceptions, and this ai’ises upon the ruling mentioned, relates to the validity of the grant produced. The petition to the Governor upon which the grant was made, solicited, by way of sale, eleven leagues from the vacant lands of the department. This bore date in March, 1831. The decree of concession, which followed in April of the same year, gave the quantity as solicited, and directed the proper local officers to give possession of the land to the grantee, and issue to him the appropriate title. Neither the petition nor the concession designated the land; and, in September, 1835, the grantee applied to the alcalde of the district to place him in possession, and to issue .to him the title of the eleven leagues in the immediate vicinity of the “ Red River of the Nachi-toches.” By order of this officer the land was surveyed, and on the 22d of the same month formal evidence of title was given to the grantee. The land thus ceded lay within twenty leagues of what then constituted the boundary between the province of Texas and the United States.
 

 The power of the Governor of Coahuila and Texas to make the grant was derived from the Mexican colonization law of August 18th, 1824, and the legislation of the State, which that law authorized. The object of that law was to induce the settlement of the vacant lands of the Republic. To this end the several States were empowered, under certain restrictions, to provide for the colonization of the lands within their limits. Their legislation was, of course, subject to the provisions of the fourth article of the law mentioned, which declares that “ those territories comprised within twenty leagues of the boundaries of any foreign nation, or within ten leagues of the sea-coast, cannot be colonized with
 
 *203
 
 out the previous approval of the supreme general executive power.”
 
 *
 

 This law of 1824, though general to the Republic of Mexico, was, so far as it affected lands within the limits of Texas, after the independence of that country, a local law of the new State — as much so as if it had originated in her legislation. It had at the time no operation in any portion of what then constituted the United States. The interpretation, therefore, placed upon it by the highest court of that State must, according to the established principles of this court, be accepted as the true intei'pretation, so far as it applies to titles to lands in that State, whatever may be our opinion of its original soundness. Eor does it matter that in the coui'ts of other States, carved out of territory since acquired from Mexico, a different interpretation may have been adopted. If such be the case, the courts of the United States will, in conformity with the same principles, follow the different ruling so far as it .affects titles in those States. The interpretation within the jurisdiction of'one State becomes a part of the law of that State, as much so as if incorporated into the body of it by the legislature. If, therefore, different interpretations are given in different States to a similar local law, that law in effect becomes by the interpretations, so far as it is a rule for our action, a different law in one State from what it is in the other. “ That the statute laws of the States,” says Mr. Justice Johnson, in delivering the opinion of this court in
 
 Shelby
 
 v.
 
 Guy,
 

 †
 

 “ must furnish the rule of decision of this court, as far as they comport with the Constitution of the United States, in all cases arising within the respective States, is a position that no one doubts. Eor is it questionable that a fixed and received construction of th.eir respective statute laws, in their own courts, mates, in fact, a part of the statute law of the country, however we may doubt the propriety of that construction. It is obvious that this admission may at times involve us in seeming inconsis
 
 *204
 
 tencies — as where States have adopted the same statutes, and their courts differ in the construction. Yet that course is necessarily indicated by the duty imposed upon us, to administer, as between certain individuals, the laws of the respective States, according to the best lights we possess of what those laws are.”
 

 In construing the fourth article cited from the colonization law of Mexico, the Supreme Court of Texas has repeatedly held that it operated as a prohibition of any grant of land within the littoral' or coast leagues mentioned, without the previous assent of the federal executive of Mexico; that such assent was essential to the validity of a grant within those limits, and that such assent was not to be inferred from the existence of the grant, but'must be affirmatively established. A series of decisions to this purport, from an early history of the State down to the present time, is found in the reports of her courts. These decisions have become a rule of property in that State, any departure from which would disturb titles to extensive and densely settled districts of country.
 
 *
 

 We
 
 receive them, therefore, to quote the language of this court, in
 
 League
 
 v.
 
 Egery, “
 
 as having a binding force almost equivalent to positive law.”
 
 †
 

 Judgment affiRMed.
 

 *
 

 See translation of the General Colonization Law of August 18th, 1824, in appendix to Halleek’s Report, Executive Documents, Senate, of 1849.
 

 †
 

 11 Wheaton, 367.
 

 *
 

 Goode
 
 v.
 
 McQueen’s Heirs, 3 Texas, 241; Edwards
 
 v.
 
 Davis, Id. 321; Smith
 
 v.
 
 Power, 23 Id. 32.
 

 †
 

 24 Howard, 266.