HOLT et al. v. SUPREME LODGE KNIGHTS OF PYTHIAS.

(Circuit Court of Appeals, Seventh Circuit. July 18, 1916.)

No. 2126.

INSURANCE ☜719(3)—FRATERNAL INSURANCE—ASSESSMENT—RIGHT TO INCREASE.

The original charter of the Supreme Lodge of the Knights of Pythias authorized it to amend its charter and by-laws at will, while its present charter (Act June 29, 1894, c. 119, § 4, 28 Stat. 97) also authorizes amendments at will provided they do not conflict with federal or state laws. The order, which was engaged in the business of fraternal insurance, several times in the past, upon discovery that the assessments charged were insufficient to carry the insurance, increased the insurance assessments. *Held* that, notwithstanding members became such when the constitution provided for monthly payments by each member to be com-

puted according to an appended table, the order had power to increase the assessments when it was discovered that those charged were insufficient to satisfy the death claims.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. ☞719(3).]

Appeal from the District Court of the United States for the District of Indiana.

Bill by Joseph Holt and others against the Supreme Lodge Knights of Pythias. From decree dismissing the bill, complainants appeal. Affirmed.

The suit is an omnibus bill in equity on behalf of 20 named plaintiffs on behalf of themselves and all others similarly situated (155 in number), for an accounting of trust funds held for the insurance department to which plaintiffs belong, and for a receiver, on the ground that the department (known as the fourth class) is insolvent; also, for a ratable distribution of such trust funds among the fourth class members.

The question is whether a fraternal beneficiary society has power to change a contract with an insured member that the rates shall not be changed, by doubling his monthly payments, and on his refusal to pay exclude him from all benefits.

Plaintiffs are citizens of Louisiana, and defendant was first organized under a general law of Congress entitled "An act to provide for the creating of corporations in the District of Columbia by general law." Its charter expired in 1890. Continuing as a de facto corporation or voluntary association for a time it was reincorporated by the act of Congress of June 29, 1894. At that time it had organized the insurance department here in question, and had done business all over the country, so there can be no serious question of its power to act outside the District of Columbia, and where it was authorized to act by its charter of 1894. A later act of June 7, 1900 (c. 861, 31 Stat. 708) ratified meetings of its governing body held outside the District.

This suit was begun January 25, 1911, the jurisdiction depending on the fact that one of the parties is a federal corporation. In its facts the case is substantially the same as Knights of Pythias v. Mims, 241 U. S. 574, 36 Sup. Ct. 702, 60 L. Ed. 1179, decided by the Supreme Court June 12, 1916; the only difference being in the form of the suit.

Plaintiffs' right to equitable relief depends entirely on the question whether the constitution of the Supreme Lodge, and its by-laws, in force when they respectively became members, constitute a contract which could not be changed by the defendant without plaintiffs' consent. It seems to be contended by the solicitors for plaintiffs that if defendant's constitution gave it no right to change the contracts, or impair the vested rights under them, such contracts may be regarded as still in force, and defendant compelled to perform them. But the bill itself goes only upon the theory that defendant has diverted trust funds in which plaintiffs are interested, and the only relief prayed for is the appointment of a receiver of such trust funds, with power to have an accounting thereof from defendant, in order that plaintiffs may receive their ratable shares. There is nothing in the bill seeking specific performance of the insurance certificates, or for a recovery of damages for the breach of plaintiffs' contracts; simply the enforcement of a trust relating to the funds on hand when the breach occurred, through payment to plaintiffs of their ratable shares in such trust funds. The case therefore turns on the question whether such a society has power, either under its constitution or otherwise, to change an impracticable or illusory insurance plan without accounting to dissenting members for trust funds belonging to them as such; even though such change may be necessary to the very life and preservation of the society.

The insurance afforded by the order is extended only to those who are members, the far greater proportion of the members not being insured therein. The order generally, however, has charge and jurisdiction over the insurance department. The insurance at first was divided into three classes, the different classes having different privileges and rates. As time passed it was found

that the rates were insufficient, and that with such classifications the plan could not be successfully carried out; thereupon, a fourth class was created, in which, unlike the others, provision was made for the accumulation of an expense fund and a mortuary fund calculated to supplement the monthly assessments and obviate the difficulties arising from a constantly increasing death rate through the advancing age of members. To accumulate such funds and meet the increasing cost of insurance, the rates in this class were materially advanced over the other classes. Business in the other classes ceased, in that no attempt was made to bring new members into them. In course of time the first three classes became practically extinct, there being now only a few members, less than ten in all. Many, if not most of them, having gone into the fourth class, it was provided that the latter class should have no relation to the other classes, but should be practically independent of them, and that the fund accumulated therein should be for the benefit only of that class. Complainants are all persons advanced in years, now past the insurable age, who have for many years past been members of the order, most of them holding original certificates in the first three classes, which were then transferred to the fourth, and all of them were members of that class at and for many years previous to the beginning of this suit.

In 1906, long after all the plaintiffs had become insured members of the fourth class, the society discovered that the rates in force, including those under the constitutions of 1884 and 1886, were entirely inadequate to maintain a sufficient mortuary fund.

About one-half of the plaintiffs became insured while the constitution of the lodge which was adopted in 1884 was in force, among other things providing for monthly payments by each member according to his age, and appending a table of monthly rates. The following clause of the instrument is relied on by plaintiffs: "Said monthly payments shall be based upon the average expectancy of life of the applicant and shall continue the same as long as his membership continues." The rest of the plaintiffs joined the lodge after the constitution of 1886 had been adopted, which provided for monthly assessments according to a specified table of rates, and also contained the same provision as to permanent rates as the former one. Later constitutions changed this clause by providing that the rates should remain the same unless changed by the lodge or its board of control.

In regard to the express reserved power to change the rules governing insurance contracts, some of the plaintiffs signed applications agreeing to abide by the rules and regulations of the lodge then in force or thereafter enacted, and in the applications of the others the language was that their contracts should be controlled by the laws, rules, and regulations then in force or thereafter enacted. Plaintiffs' certificates or policies contained similar provisions. The original charter of the corporation provided that the Supreme Lodge might amend its constitution and by-laws at will, and section 4 of its present congressional charter provides that the society may amend its constitution at pleasure, provided the amendments do not conflict with the laws of the United States or any state. This power, as we have seen, was exercised in 1888 and later years by providing that the insured members should continue their original payments unless otherwise fixed by the lodge. In 1906 a more positive clause was adopted, to the effect that the laws of the order, and all amendments thereto, should be part of the insurance contracts.

It further appears that all the plaintiffs submitted to certain increases made by the lodge in their insurance rates, and paid the additional sums required by such legislation down to January 1, 1911, when the new rates became effective, which they refused to pay.

Henry L. Lazarus, of New Orleans, La., for appellants.

Sol. H. Esarey, of Indianapolis, Ind., for appellee.

Before MACK and ALSCHULER, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). In the Mims Case, 241 U. S. 574, 36 Sup. Ct. 702, 60 L. Ed. 1179, the

Supreme Court decided that the benefit certificate of the member "was not a contract, but was a regulation subject to the possibility inherent in the case," and that "the essence of the arrangement was that the members took the risk of events, and if the assessments levied at a certain time were insufficient to pay a benefit of a certain amount, whether from diminution of the members or any other cause, either they must pay more or the beneficiary take less." No possible distinction can be made between this litigation and the Mims Case brought against the same society.

The decree dismissing the bill is affirmed.