# SUPREME LÔDGE, KNIGHTS OF PYTHIAS, *v.* MEYER.

## ERROR AND CERTIORARI TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 214.   Argued March 12, 1924.—Decided April 28, 1924.

1. While proceedings in the federal courts are not within the terms of Art. IV, § 1, of the Constitution, they nevertheless must be accorded the same full faith and credit by state courts as would be required in respect of the judicial proceedings of another State. P. 33.

2. Where statutes of two States, couched in the same terms, receive different constructions by the courts of their respective localities, the constructions become parts of the respective statutes, which are to be treated accordingly as different laws. P. 34.

3. In an action to recover insurance under a benefit certificate, issued by a fraternal order created by an act of Congress which provided that its constitution, and the amendments thereof, should not conflict with the laws of any State, a defense based on the refusal of the insured to pay increased dues as required by an amendment adopted by the order, was overruled by the Supreme Court of Nebraska upon the ground that the order had not a "representative form of government" within the meaning of a statute of Nebraska in -force when the new rates were adopted. *Held:*

(a) The meaning attributed by the Nebraska Supreme Court to the Nebraska statute must be accepted by this Court, on review, as though it had been specifically expressed in the statute. P. 32.

(b) A decree of the federal court in Indiana, holding that the order had a "representative form of government" within the meaning of a similar statute of that State, was not binding in the Nebraska litigation, because the two issues—the meaning of the Nebraska statute and the meaning of the Indiana statute—were not the same. P. 33.

4. Under Jud. Code, § 237, as amended by the Act of September 6, 1916, certiorari and not error is the remedy to review a state decision on a right claimed under a federal statute or authority, where the validity of the statute or authority itself is not in question. P. 36.

109 Neb. 108, affirmed.

ERROR and certiorari to a judgment of the Supreme Court of Nebraska affirming a judgment for the plaintiff, Meyer, in an action to recover insurance under a benefit certificate issued by the plaintiff in error.

*Mr. W. J. Connell* and *Mr. Sol H. Esarey*, with whom *Mr. T. P. Littlepage*, *Mr. George A. Bangs* and *Mr. Ward H. Watson* were on the brief, for plaintiff in error.

*Mr. D. W. Livingston*, with whom *Mr. C. F. Reavis* was on the brief, for defendant in error.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This case is here on error and also upon petition for writ of certiorari. Consideration of the latter was postponed until hearing on the merits.

Defendant in error was the beneficiary named in a benefit certificate of life insurance issued to one of its members, by the plaintiff in error, a fraternal order created by Act of Congress of June 29, 1894, c. 119, 28 Stat. 96. Upon the death of the assured an action was brought in a state court by the beneficiary to recover the amount of the insurance, and judgment was rendered in his favor. On appeal to the State Supreme Court the judgment was affirmed on the authority of the decision of the same court on a former appeal.

After the insurance policy had gone into effect, the Supreme Lodge, by an amendment, increased the dues from $5.70 per month to $26.30 per month. Prior to the effective date of the new rates the assured had paid all dues assessed under the old rates. After such date he refused to pay at the new rates, upon the ground, among others, that in disregard of a state statute, the society was not operating under a representative form of government when the rates were increased; but he regularly and duly tendered payment at the old rates.

Section 4 of the Congressional Act provides: "That said corporation shall have a constitution, and shall have power to amend the same at pleasure: *Provided,* That such constitution or amendments thereof do not conflict with the laws of the United States or of any State." A statute of Nebraska in force at the time the new rates were adopted, defines a fraternal benefit society as a corporation, etc., organized and carried on for the sole benefit of its members and their beneficiaries and not for profit, and provides: "Each such society shall have a lodge system, with ritualistic form of work and representative form of government." § 1, c. 47, Laws of 1897, p. 266.

According to the stipulation of facts, the Supreme Lodge when it made the amendment increasing rates, "was composed of 163 members and that of such members, nine were Past Supreme Chancellors and eight were Supreme Officers of the defendant; 98 were holders of certificates in the Insurance Department and 146 were delegates elected by the various Grand Lodges within the order;" all of whom participated in enacting the amendment. On the first appeal, the State Supreme Court, after a full discussion of the question and of the facts, and a review of its earlier decisions, held that the body, above described, did not constitute a representative form of government, within the meaning of the state statute. 104 Neb. 505. Upon rehearing the court adhered to this conclusion, *Id.* 511; and, upon the second appeal, again affirmed it. 109 Neb. 108.

Under the settled rule of this Court, declared so frequently and uniformly as to have become axiomatic, we must accept this decision of the highest court of the State fixing the meaning of the state legislation, as though such meaning had been specifically expressed therein. See, for example, *Leffingwell* v. *Warren,* 2 Black, 599, 603; *Green* v. *Lessee of Neal,* 6 Pet. 291, 297–300. And we follow

the state construction even though it may not agree with our own opinion. *Supervisors* v. *United States,* 18 Wall. 71, 82. *Shelby* v. *Guy,* 11 Wheat. 361, 367; *Tioga R. R.* v. *Blossburg & Corning R. R.,* 20 Wall. 137, 143. No question is raised as to the necessity for compliance with the provisions of the state statute; but the defense pleaded and relied upon is that the matter was concluded by a decree of the Federal District Court of Indiana, affirmed by the Circuit Court of Appeals, *Holt* v. *Supreme Lodge Knights of Pythias,* 235 Fed. 885, establishing the validity and enforceability of the increased rates; that such decree was binding, as *res adjudicata,* upon Meyer, the plaintiff; and that the court below, in declining to so consider it, denied full faith and credit to the judicial proceedings of another State, in contravention of Art. IV, § 1, of the Constitution of the United States and of § 905, Revised Statutes.

While the judicial proceedings of the federal courts are not within the terms of the constitutional provision, such proceedings, nevertheless, must be accorded the same full faith and credit by state courts as would be required in respect of the judicial proceedings of another State. *Hancock National Bank* v. *Farnum,* 176 U. S. 640, 644; *Embry* v. *Palmer,* 107 U. S. 3, 9. It appears from the record in the *Holt Case,* which was in evidence and is in the record here, that the court expressly found that the society was, during its entire existence, operating under a representative form of government. We assume, for present purposes, that the plaintiff is bound by that decree; but the question—and the vital question—still remains, is the issue the same? We are of the opinion that it is not the same and that the plea of *res adjudicata* fails.

The principal place of business of the order was in Indiana; and the question presented in the *Holt Case,* which was brought in Indiana, evidently was whether

there was a representative form of government within the meaning of the statute of that State, § 5043, 2 Burns' Indiana Stats., 1914, p. 882, since the federal statute made no requirement on the subject, and the finding, unless to satisfy the Indiana law, would have been meaningless. The question of compliance with the statute of Nebraska or those of other States was not involved. The Indiana statute is reproduced in the margin,[1] and, as will be seen, differs from the Nebraska statute in that the former specifically defines what shall constitute a representative form of government, while the latter does not. But if we assume, for the moment, that the two statutes are alike, nevertheless, our determination must be the same. It was within the competency of the federal court to construe the Indiana statute in one way, and it was equally within the competency of the Nebraska Supreme Court to construe the Nebraska statute in an opposite way; and, since the construction becomes part of the statute and is to be read as though in its text, in the one case as in the other, the result is that they are, in effect, not the same, but different

---

[1] § 5043. ". . . Each association shall have a lodge system with ritualistic form of work and a representative form of government. Any association having a supreme governing or legislative body and subordinate lodges or branches by whatever name known, into which members shall be elected, initiated and admitted in accordance with its constitution, laws, rules, regulations, and prescribed ritualistic ceremonies, which subordinate lodges or branches shall be required by such association to hold regular or stated meetings at least once in each month, shall be deemed to be operating under the lodge system. Any association shall be deemed to have a representative form of government when it shall provide in its constitution and laws for a supreme legislative or governing body, composed of representatives elected either by the members or by delegates elected by the members through a delegate convention system, together with such other members as may be prescribed by its constitution and laws: *Provided,* That the elective representatives shall constitute a majority in number and have not less than a majority of the votes, nor less than the votes required to amend its constitution and laws . . ."

statutes.  In *Christy* v. *Pridgeon,* 4 Wall. 196, 203, this
Court said:

"Nor does it matter that in the courts of other States,
carved out of territory since acquired from Mexico, a dif-
ferent interpretation may have been adopted.  If such be
the case, the courts of the United States will, in conformity
with the same principles, follow the different ruling so
far as it affects titles in those States.  The interpretation
within the jurisdiction of one State becomes a part of the
law of that State, as much so as if incorporated into the
body of it by the legislature.  If, therefore, different inter-
pretations are given in different States to a similar local
law, that law in effect becomes by the interpretations, so
far as it is a rule for our action, a different law in one State
from what it is in the other."

In *Louisiana* v. *Pilsbury,* 105 U. S. 278, 294, it was said:

"So far does this doctrine extend, that when a statute
of two States, expressed in the same terms, is construed
differently by the highest courts, they are treated by us as
different laws, each embodying the particular construction
of its own State, and enforced in accordance with it in all
cases arising under it."  *Shelby* v. *Guy, supra; May* v.
*Tenney,* 148 U. S. 60, 64; *Detroit* v. *Osborne,* 135 U. S.
492, 498; *Chicago Union Bank* v. *Kansas City Bank,* 136
U. S. 223, 235.  It follows that there is not identity of
issue in the two cases, since, so far as this Court is con-
cerned, the statutes which determine it are of exactly op-
posite import.  In principle, it is the same as though the
Indiana statute, which controlled the question decided
in the first suit, had been superseded by a later Indiana
enactment to the contrary effect, and a second suit, arising
under and controlled by the later enactment, was brought,
involving the same question.  The intervention of the
new and antagonistic statute in either case furnishes a
new basis for the litigation, and the issue is no longer the
same.  *Memphis City Bank* v. *Tennessee,* 161 U. S. 186,

192; *Utter* v. *Franklin,* 172 U. S. 416, 424; *Erskine* v. *Steele County,* 87 Fed. 630, 636; affirmed 98 Fed. 215, 220.

Prior decisions of this Court are pressed upon our attention, of which *Supreme Lodge, Knights of Pythias* v. *Mims,* 241 U. S. 574, and *Supreme Council of the Royal Arcanum* v. *Green,* 237 U. S. 531, are examples. They are not in point. Neither the effect of state statutes imposing conditions like the one here under review, nor the question in respect of identity of issue, upon which the plea of *res adjudicata* in the present case turns, was involved or considered.

Under § 709, Revised Statutes, Jud. Code § 237, this case would be properly here upon writ of error, *Pittsburgh, &c. Ry. Co.* v. *Long Island Loan & Trust Co.,* 172 U. S. 493, 508; *Hancock National Bank* v. *Farnum, supra;* *Embry* v. *Palmer, supra;* but, as amended by the Act of September 6, 1916, c. 448, 39 Stat. 726, the remedy is by certiorari. We therefore dismiss the writ of error, grant the petition for certiorari, *Yazoo & M. V. R. R. Co.* v. *Clarksdale,* 257 U. S. 10, 15–16; and, for the reasons given above, affirm the judgment of the State Supreme Court.

*Affirmed.*

The separate opinion of MR. JUSTICE McREYNOLDS.

Claiming as beneficiary, Meyer brought an action upon a policy issued by the Supreme Lodge in the District Court, Otoe County, Nebraska.

The declaration alleges: "That the defendant is, and at all times herein mentioned was, a fraternal order or organization maintaining a life insurance department for its members, organized and existing under an act of the United States Congress, in the District of Columbia, and having its principal offices and place of business in the City of Indianapolis, in the State of Indiana, and duly authorized to transact its business in the State of Nebraska. That on and prior to the 11th day of June, 1885,

Louis J. Meyer, a resident of Otoe County, Nebraska, was a member of a subordinate lodge of the defendant, and on said date the said defendant issued and delivered to the said Louis J. Meyer in Otoe County, Nebraska, its membership certificate No. 4651, by the terms of which it insured the life of the said Louis J. Meyer in the sum of $2,000.00, and agreed in the event of his death to pay that sum to a beneficiary therein named. That on or about the 31st of May, 1910, the said Louis J. Meyer surrendered said certificate to the defendant for the sole purpose of changing the beneficiary therein named, and thereafter the defendant issued in lieu thereof to the said Louis J. Meyer its certificate of membership dated June 30, 1910, numbered 4651, insuring the life of the said Louis J. Meyer in the sum of $2,000.00, by the terms of which the defendant agreed that in the event of the death of the said Louis J. Meyer to pay to George O. Meyer, this plaintiff, the sum of $2,000.00, a copy of which membership certificate is hereto attached, marked Exhibit 'A,' and made a part hereof." And further that the assured died April 11, 1916, after performing all things required of him.

Certificate No. 4651—Exhibit A—recites that Louis J. Meyer had been accepted as a member of the insurance department and the Supreme Lodge promised to pay the designated beneficiary two thousand dollars, subject to certain conditions and payment of $5.70 each month. Also, " the member holding this certificate shall make all monthly payments as they may be due from him, and also make any extra or special monthly payments required from him. . . . His rate of contribution hereunder may be changed, increased or adjusted at any time in accordance with the laws of this society when deemed necessary to carry out the purposes of the insurance department."

The defense was that by a duly adopted rule, or law, the Supreme Lodge had increased the monthly rates for

the time subsequent to January 1, 1911, and assured had refused to pay them.

The act of Congress which incorporated the Supreme Lodge among other things provided, "That said corporation shall have a constitution, and shall have power to amend the same at pleasure: *Provided,* That such constitution or amendments thereof do not conflict with the laws of the United States or of any State." Act of June 29, 1894, c. 119, 28 Stat. 96, 97. Under this federal charter it might amend its statutes, or by-laws; and the change of rates was effective unless prohibited by statute as to Nebraska members. The obligation of the contract between the lodge and the assured presents a question of federal law. *Supreme Council of the Royal Arcanum* v. *Green,* 237 U. S. 531; *Hartford Life Insurance Co.* v. *Ibs, id.* 662; *Supreme Lodge, Knights of Pythias* v. *Mims,* 241 U. S. 574. This is plain under the last cited case, which reviewed and reversed the judgment of the Texas court denying the validity of the by-law here questioned.

The court below held that under c. 47, Laws of Nebraska, 1897, the action of the Supreme Lodge in undertaking to increase rates was without effect because the association did not have a "representative form of government." And this makes it necessary to inquire whether that act is fairly susceptible of the construction adopted by the state court. Generally this Court accepts the construction of a local statute approved by the state court of last resort, but the rule does not apply where this is fanciful and amounts to a mere subterfuge. *Leathe* v. *Thomas,* 207 U. S. 93, 99; *Vandalia R. R. Co.* v. *South Bend, id.* 359, 367; *Enterprise Irrigation District* v. *Canal Co.,* 243 U. S. 157, 164; *Superior Water Co.* v. *Superior,* 263 U. S. 125, 136.

Chapter 47 contains twenty-four sections. The first declares: "A fraternal beneficiary association is hereby

declared to be a corporation, society or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit. Each such society shall have a lodge system, with ritualistic form of work and representative form of government." The remaining sections relate to the organization and government of domestic corporations and provide for reports by and the licensing and duties of such corporations when organized in other States. Section 16: "Any such association refusing or neglecting to make the report as provided in this act shall be excluded from doing business within this state. The auditor of public accounts must, within sixty days after the failure to make such report, or in case any such society shall exceed its powers, or shall conduct its business fraudulently, or shall fail to comply with any of the provisions of this act, give notice in writing to the attorney general, who shall immediately commence an action against such society to enjoin the same from carrying on any business. . . ." There is nothing in the act which excludes an association with a government like that of plaintiff in error. It does not undertake to invalidate contracts of such companies after licenses have been issued to them. Nor do I find that the laws of the State inhibited the auditor from licensing an association with a non-representative form of government.

It is stipulated and agreed " that the defendant [plaintiff in error] is a fraternal order or organization, maintaining a life insurance department for its members, existing under an act of the United States Congress in the District of Columbia, having its principal place of business in the City of Indianapolis and State of Indiana, and authorized to transact business in the State of Nebraska during the period covered by the pleadings in this case." With knowledge of its form of government the duly designated official licensed it to do business within the State.

Attributing a fanciful meaning to the term "representative form of government," the court below declared that the challenged by-law was not adopted as required by the Nebraska statute and therefore was without force within that State. This was the excuse offered for annulling an agreement entered into by an association incorporated under federal law and duly licensed by the State.

A view of the statute is enough to show that it did not undertake to prescribe rules for the internal government of foreign corporations licensed to do business within the State or to control agreements between such corporations and their members.

Moreover, it seems impossible reasonably to conclude that plaintiff in error had no "representative form of government" because a few officers, by virtue of their positions, constituted a small minority (10%) of the law-making body, otherwise composed of elected representatives. And certainly the conclusion of the court is not strengthened by the opinion which advances the following as the reason therefor:—"To retain the exercise of governmental authority in the hands of the people is the modern trend. Extended argument is not needed to establish this fact. Witness the election of United States senators by direct vote; the direct primary; and the initiative and referendum. Fraternal societies are no exception to the rule."

In the circumstances I think we should refuse to accept a ruling so obviously contrary to reason, treat it as a mere subterfuge, and hold that under *Supreme Lodge, Knights of Pythias* v. *Mims, supra,* the rates were properly increased and by failing to pay them the assured surrendered all rights under the policy.