**PUBLIC NAT. BANK OF NEW YORK v. KEATING et al.**

**No. 90.**

Circuit Court of Appeals, Second Circuit.

Feb. 2, 1931.

Arthur J. W. Hilly, Corp. Counsel, of New York City (William H. King and Eugene Fay, both of New York City, of counsel), for appellants.

Moses & Singer, of New York City (Martin Saxe, Henry L. Moses, Robert C. Beatty, and Herman G. Kopald, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges

MANTON, Circuit Judge.

Appellee is a national bank in the city of New York. Its shareholders were assessed and. taxed, by the assessors of the city of

New York, under the provisions of the New York Tax Law as amended by chapter 897 of the Laws of 1923. This suit, by the bank, seeks to enjoin the appellants from the collection of the taxes from such shareholders, for the reason that they were made to sustain a heavier burden of taxation than that imposed on competitive moneyed capital in the hands and use of other individuals and corporations, contrary to section 5219 of the U. S. Revised Statutes, as amended (title 12, U. S. Code, § 548 [12 USCA § 548]). Section 5219 of the Revised Statutes gives a consent to the state Legislature of the various states to tax shares of national bank stock. It provides:

"1. * * * (b) In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section. * * *

"2. The shares * * * shall be taxed in the taxing district where the association is located and not elsewhere."

The powers of national banks are found in section 5136, U. S. Revised Statutes (title 12, U. S. Code, § 24 [12 USCA § 24]). They are: "To exercise by * * * board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this chapter."

The New York state Tax Law referred to provides for exemption of intangible personal property from taxation locally for state or local purposes, "except shares of stock of banks or banking associations and except other moneyed capital coming into competition with the business of national banks, which shares and other moneyed capital shall be taxed locally for state or local purposes as prescribed by this chapter, provided that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." Consol. Laws, c. 60, § 4-a, as amended by Laws 1923, c. 897, § 1. Stockholders of every bank or banking association were taxed on the value of their shares of stock therein. The banks were obliged to make reports. The value of the stock of each bank is ascertained and fixed by adding together the amount of capital stock, surplus, and undivided profits of such bank and by dividing the result by the number of outstanding shares. Section 14 (as amended by Laws 1923, c. 897, § 2) provides for taxation of owners or holders of moneyed capital other than shares of banks and trust companies taxable on such moneyed capital; section 23-a (as added by Laws 1923, c. 897, § 3) provides for making reports for such moneyed capital; section 25 (as amended by Laws 1923, c. 897, § 5) provides that moneyed capital other than shares of banks and trust companies shall be assessed at its actual value, against the owners or holders thereof. Provision is made for assessment and collection of such taxes. Under the state Tax Law, the taxes are assessed by cities and towns and collected by the treasury, except in New York City and Buffalo, where collection is made by the receiver of taxes. The banks are, by provision of the statute, made agents for their shareholders for the payment of such taxes. The tax here under consideration is for the year 1926, and amounts to $133,429.61.

The equitable jurisdiction of the court is invoked by the bank, because it is the agent for the shareholders in the payment of the taxes assessed against them. Penalties are imposed on the gross amount of the tax, and 5 per cent. attaches to the bank itself, notwithstanding it is a stakeholder. It suffers the penalty if it refuses to pay a legal tax or subjects itself to suit by each stockholder if it pays an illegal tax. There is no adequate remedy in the state courts at law. Jurisdiction of the federal court in equity is based on this and the Constitution and statutes of the United States. Cummings v. National Bank, 101 U. S. 153, 157, 25 L. Ed. 903. In the Cummings Case, the court held that, by paying the money under protest and suing at law to recover it back, the bank is not in a position where the remedy at law is adequate. As a stakeholder it should not be obliged to

meet the cost and expenses of litigation of "a separate suit by each shareholder." By this suit in equity, a multiplicity of suits will be avoided. Hopkins v. Southern Cal. Tel. Co., 275 U. S. 393, 48 S. Ct. 180, 72 L. Ed. 329; Risty v. Chicago, Rock Island & Pac. R. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641.

In and about the city of New York, the national banks, as authorized by section 5136, U. S. Revised Statutes (title 12, U. S. Code, § 24 [12 USCA § 24]), employ their funds in making loans to individuals and corporations on time and demand with and without collateral security; invest, trade, deal in, and participate in the underwritings of corporate bonds and notes, including bonds and notes of foreign governments and municipalities, and of states and their political subdivisions, other than New York state; they make loans on New York Stock Exchange collateral to stockbrokers and bondbrokers as well as private individuals. They deal in evidences of debt, acceptances, and commercial paper, and it was established that in 1926 such transactions ran into many millions of dollars. Such transactions and operations are conducted in the open competitive market in New York City, and form part of the money market operations as a whole in which many thousands of individuals residing in the city and corporations doing business there, besides state banks, trust companies, and private bankers participate and employ their funds.

The Court of Appeals of the state of New York has construed and defined the state Taxing Act as to its practical operation and effect. In Pratt v. Goldfogle, 242 N. Y. 277, 151 N. E. 452, the court said that the ordinary application of the provisions of chapter 897 of the Laws of 1923 is to be found in the cases of employing money capital to carry on a private banking business or business akin thereto; that the Legislature had the right to enact that all the persons engaged in a certain kind of business shall be subject to a rate of taxation; that the competition prescribed by the state statute means a condition of business rivalry arising out of the continuous and regular use of moneyed capital in employment and operations, having for their primary and characteristic purpose, as distinguished from incidental operations or details, the transaction of some branch of business which may be carried on by national banks; that the individual who from time to time purchases a mortgage or buys bonds or stocks for investment cannot be held to be engaged in competitive business. In a series of decisions, that court has held that moneyed capital is not in competition with national banks where employed in a general stock brokerage business (People ex rel. Broderick v. Goldfogle, 242 N. Y. 540, 152 N. E. 418; People ex rel. Bonner v. Goldfogle, 242 N. Y. 541, 152 N. E. 418; People ex rel. Berdan v. Goldfogle, 242 N. Y. 542, 152 N. E. 419); also, in the business of purchasing corporate bonds secured by mortgages on real estate and selling such bonds at a profit to its customers for cash (People ex rel. Peabody, Houghteling & Co. v. Goldfogle, 242 N. Y. 543, 152 N. E. 419); the business of factoring and commission merchant selling for financing textile mills (People ex rel. Talcott v. Goldfogle, 242 N. Y. 544, 152 N. E. 420); the business of dealing in installment paper, which comprised contracts of conditional sales, leases, mortgages, way notes all evidencing a sale of merchandise on the installment or deferred payment plan (People ex rel. Bankers' Commercial Security Co. v. Goldfogle, 242 N. Y. 545, 152 N. E. 420); or in a stock brokerage business engaged in buying and selling stocks for customers (People ex rel. Benkard v. Goldfogle, 242 N. Y. 546, 152 N. E. 420). The construction thus placed upon the state Tax Act by the highest court of New York has limited the authority of the city and state officials to assess and collect on moneyed capital which we think was employed in competition with national banks. The court said in People ex rel. Pratt v. Goldfogle, 242 N. Y. 303, 151 N. E. 452, that it construed and interpreted the state tax statute as limiting the moneyed capital in competition with national banks to that whose characteristic and principal purpose brought it into rivalry with the business of banks. It pointed out that there was capital employed by individuals in the stock brokerage business and at times in carrying the stock of customers on a margin as well as dealing in funds in the factoring business, in the business of purchasing conditional sales contracts calling for payments in installments, and pointed out that this loaning of money in competition was indirect and remote and was simply incidental to the main business, which was not a competitive one, and that therefore the moneyed capital employed under such circumstances did not come within the meaning of the statute.

The construction placed, by the highest court of New York, upon its Tax Act in the cases referred to, in effect is that only such

money is in competition with national banks as comes into the market in a business rivalry arising out of the continuous and regular use of capital in employment or operation, having for its primary and characteristic purpose, as distinguished from some incidental operation or detail, the transaction of some branch of business which may be carried on by the national banks. This construction of the statute with its limitations has been followed by the taxing officials. It was peculiarly·subject to the state court's construction (Christy v. Pridgeon, 4 Wall. 196, 18 L. Ed. 322; Supreme Council, Knights of Pythias v. Meyer, 265 U. S. 30, 44 S. Ct. 432, 68 L. Ed. 885), and such construction having already been acted upon by the taxing officials, if, as thus construed and applied to the facts of this case, it discriminates, the act is invalid (Mont. Nat. Bank v.· Yellowstone County, 276 U. S. 499, 48 S. Ct. 331, 72 L. Ed. 673; Cudahy Packing Co. v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; Ward & Co. v. Krinsky, 259 U. S. 503, 42 S. Ct. 529, 66 L. Ed. 1033, 28 A. L. R. 1207; Clement Nat. Bank v. Vermont, 231 U. S. 120, 34 S. Ct. 31, 58 L. Ed. 147).

After this construction by the New York court, the Supreme Court of the United States decided First National Bank v. Hartford, 273 U. S. 548, 47 S. Ct. 462, 71 L. Ed. 767, 59 A. L. R. 1, and Minnesota v. First Nat. Bank of St. Paul, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774. These cases hold substantially that there is such discrimination as to violate section 5219, R. S. (as amended), where moneyed capital, substantial in amount in comparison with the capitalization of national banks, is employed either in a business or by private investors in the same sort of transaction as those in which the national banks engage and in the ·same locality where they do business, and only personal investments which are not in competition are excluded from moneyed capital. Moreover, it was said that the restriction was intended to prevent discriminatory taxation in favor of capital invested by institutions or individuals engaged either in similar businesses or in particular operations and investments like those of national banks. It was intended that the federal restriction should apply where·· the competition exists only with respect to particular features of the business of national banks, and where moneyed capital is employed substantially as in the loan and investment features of banking, in making investments by way of loan, dis-

count, or otherwise, in notes, bonds, or other securities, with a view to sale or repayment. It was held not to be directed merely at discriminatory taxation which favors competing banking business. And the competition intended arises not from the character of the business of those who compete, but from the manner of employment of capital by them. Thus it was said that competition guarded against may arise from the employment of capital invested in a business or the employment of capital invested by institutions or individuals in particular operations or investments like those of national banks, including investments of individuals out of surplus funds used in investment and reinvestment in bonds, mortgages, and other evidences of indebtedness. These cases hold that competition is sufficiently established where it is made to appear that national banks and competing investors are both seeking and securing, in the same locality, capital investments of the same class; and the court, in construing section 5219 did not imply that equality of taxation under the·federal statute refers only to moneyed capital invested in business substantially identical with the business carried on by national banks.

The court below found: That for the year 1926, the moneyed capital assessment rolls disclosed stockholders of national banks in the City of New York were assessed $570,030,574; national banks situated elsewhere in the· state were assessed, $133,052,330.71— a total of $703,082,904.71. Only 150 individuals were assessed for moneyed capital in the city of New York, and 60 elsewhere in the state. The 150 individuals were assessed $50,320,100 and the 60 $749,502.18, a total of $51,069,602.18, in the aggregate, on which the tax of 1 per cent. amounted to $510,696.02. That 100 corporations were assessed for moneyed capital in the city of New York and 17 elsewhere in the state; that the assessment against the 100 corporations was but $50,239,300, and against the 17 remaining corporations $1,004,177.52, an aggregate of $51,243,477.52. Of the 150 individual assessments on this 1926 assessment roll in New York City, 40 were against statutory bankers and 95 against members of firms engaged in the banking business. Fifty-two of the 60 individuals assessed elsewhere in the state were private bankers. Further, the court said that the assessment of competitive moneyed capital in New York City alone shrank from $522,401,768 in 1923, $468,817,751, in 1924, and $503,269,850 in 1925, to $100,559,400 in

1926, when the Pratt Case was decided. The court found that "in 1926 billions of dollars were employed by thousands of brokers, private bankers, bond dealers, individual investors of surplus funds, firms and corporations in the City of New York and elsewhere in the State of New York in investing and re-investing, dealing in bonds, notes, commercial paper, acceptances, real estate mortgages and other securities and evidences of debt, lending money on call or on time, with or without security, discounting commercial paper, and making loans or advances to customers upon collateral security, and that they did so in substantially the same manner as did national banks in the City of New York and elsewhere in the state, and that in doing so they competed with the business of national banks."

The record justifies these conclusions of the court. Thus it is satisfactorily established that large sums of competitive moneyed capital were exempt from that taxation which was imposed upon national bank shares. National bank shares were required to sustain a far heavier burden of taxation than was imposed upon this very substantial amount of competitive money in the hands of other individuals, institutions, and corporations in the state.

Congress permitted the state to tax bank shares only by enacting a statute intended to be consistent with section 5219, whose scope, by its construction and application, would be limited so that the resulting tax burdens would fall no heavier upon such banking shares than on any competing moneyed capital, substantial in amount, in the hands of individual citizens. The New York state act, with the construction placed upon it by the state's highest court, has discriminated against national bank shareholders and imposed a heavier burden on them, contrary to and in violation of section 5219 of the U. S. Revised Statutes, as amended. The tax here assessed is therefore invalid.

The decree below is affirmed.