**WALKER v. CHAPMAN, Director of Industrial Relations of Ohio, et al.**
**No. 1170.**

District Court, S. D. Ohio, E. D.
Nov. 20, 1936.

Agnes B. Dickinson, of Columbus, Ohio, for plaintiff.

John W. Bricker, Atty. Gen. (Isadore Topper and John K. Evans, both of Columbus, Ohio, of counsel), for defendants.

Before ALLEN, Circuit Judge, and NEVIN and UNDERWOOD, District Judges.

PER CURIAM.

On the 14th day of January, 1936, complaint herein filed her bill of complaint, wherein she challenges the constitutionality of the Ohio Minimum Wage Law (Gen. Code, §§ 154-45d to 154-45t), alleging that "the Ohio minimum wage law and the provisions of the Ohio Constitution authorizing the Ohio Legislature to pass minimum wage laws, are void and of no effect because they are repugnant to and in violation of the Constitution of the United States in that they deprive the complainant of the liberty of contract guaranteed to her by the Fifth and Fourteenth Amendments to the Constitution of the United States, and because they deny to the complainant the equal protection of the law and because they deprive the complainant of her liberty and her property without due or any process of law." She seeks to enjoin defendants from enforcing the law.

On June 8, 1936, defendants filed a motion to dismiss the bill of complaint upon the grounds set forth in the motion.

Upon a consideration of that motion, the court is of the opinion it is not well taken and that it should be, and it is overruled.

On March 6, 1936, a joint answer of all the defendants was filed. Defendants deny that the law is unconstitutional; that it is unreasonable and prejudicial to women workers; that it imposes unreasonable restrictions upon the right of complainant to contract for her services in violation of the rights and privileges guaranteed to her under the Constitution of the United States or any amendment thereto; and deny that complainant will be irreparably injured by reason of the enforcement of the provisions of the law in question. Defendants pray that an interlocutory injunction may be denied and the bill dismissed.

The issue presented, in its broad aspect, is not new. The only question involved is whether the law under consideration in the instant case can be distinguished from the respective acts considered in cases heretofore decided by the Supreme Court of the United States.

In the case of Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L. Ed. 785, 24 A.L.R. 1238, the Supreme Court had before it the question as to the constitutionality of the Act of September 19, 1918, 40 Stat. 960, providing for the fixing of minimum wages for women and children in the District of Columbia. The lower courts had held that the act there in question was unconstitutional, and their decrees were affirmed by the Supreme Court.

If the act here in question comes within the decision in the Adkins Case, this court has no alternative but to declare the act unconstitutional.

We think that the Ohio act is so distinguishable from the act under consideration in the Adkins Case as to remove it from that ban. Nor is our view altered by the decision in Morehead v. People ex rel. Tipaldo, 298 U.S. 587, 56 S.Ct. 918, 920, 80 L.Ed. 1347, 103 A.L.R. 1445, decided by the Supreme Court June 1, 1936. On the contrary, the decision in the Morehead Case strengthens our view.

In the Adkins Case (261 U.S. 525, at p. 555, 43 S.Ct. 394, 400, 67 L.Ed. 785, 24 A.L.R. 1238) the Supreme Court pointed out that: "The standard furnished by the statute [there under consideration] for the guidance of the board is so vague as to be impossible of practical application with any reasonable degree of accuracy. What is sufficient to supply the necessary cost of living for a woman worker and maintain her in good health and protect her morals is obviously not a precise or unvarying sum—not even approximately so. The amount will depend upon a variety of circumstances: The individual temperament, habits of thrift, care, ability to buy necessaries intelligently, and whether the woman lives alone or with her family." Again (261 U.S. 525, at page 558, 43 S. Ct. 394, 401, 67 L.Ed. 785, 24 A.L.R. 1238): "The feature of this statute, which perhaps more than any other, puts upon it the stamp of invalidity, is that it exacts

from the employer an arbitrary payment for a purpose and upon a basis having no causal connection with his business, or the contract or the work the employee engages to do. The declared basis, as already pointed out, is not the value of the service rendered, but the extraneous circumstance that the employee needs to get a prescribed sum of money to insure her subsistence, health, and morals. * * * The moral requirement implicit in every contract of employment, viz. that the amount to be paid and the service to be rendered shall bear to each other some relation of just equivalence, is completely ignored." And again (261 U.S. 525, at page 559, 43 S.Ct. 394, 402, 67 L.Ed. 785, 24 A.L.R. 1238): "A statute requiring an employer to pay in money, to pay at prescribed and regular intervals, to pay the value of the services rendered, even to pay with fair relation to the extent of the benefit obtained from the service, would be understandable. But a statute which prescribes payment without regard to any of these things, * * * is so clearly the product of a naked, arbitrary exercise of power that it cannot be allowed to stand under the Constitution of the United States."

The Ohio statutes here in question are sections 154-45d to 154-45t, G.C.O. The definitions to be applied to the terms used in the act are set forth in section 154-45d, paragraph 8 whereof reads as follows:

"8. 'A fair wage' shall mean a wage fairly and reasonably commensurate with the value of the service or class of service rendered. In establishing a minimum fair wage for any service or class of service under this article, the director, superintendent or the wage board without being bound by any technical rules of evidence or procedure (1) may take into account all relevant circumstances affecting the value of the service or class of service rendered, and (2) may be guided by like considerations as would guide a court in a suit for the reasonable value of services rendered where services are rendered at the request of an employer without contract as to the amount of the wage to be paid, and (3) may consider the wages paid in the state for work of like or comparable character by employers who voluntarily maintain minimum fair wage standards."

As above indicated, under the Ohio law, the minimum fair wage to be fixed "shall mean a wage fairly and reasonably commensurate with the value of the service or class of service rendered." Thus the standard fixed by the Ohio minimum wage statute is not uncertain as was the legislative standard passed on in the Adkins Case. It cannot be said, as in the Adkins Case, that the standard furnished for the guidance of the board is so vague as to be impossible of practical application, for the reason that the standard set under the Ohio act can be fixed upon a basis of reasonableness. It is capable of a reasonably definite and accurate application. The Supreme Court did not condemn the purpose of minimum wage legislation in the Adkins Case; it condemned the method of setting such a wage embodied in the legislation enacted by Congress in the District of Columbia.

In the Morehead Case, the Supreme Court held that, unless the Morehead Case was distinguishable from the Adkins Case, that case (the Adkins Case) "requires affirmance of the judgment below"; that is, affirmance of the judgment declaring the New York statute unconstitutional. The court further held that, inasmuch as the petition for the writ sought review only upon the ground that the Morehead Case was distinguishable from the Adkins Case and since no application had been made for reconsideration of the constitutional question decided in the Adkins Case, the court "confines itself to the ground upon which the writ was asked or granted," and that petitioner would not "be heard upon the question whether the Adkins Case should be overruled. He maintains that it may be distinguished on the ground that the statutes are vitally dissimilar."

The Supreme Court thereupon held that it was bound to accept the construction of the New York act as placed upon it by the Court of Appeals of that state (270 N.Y. 233, 200 N.E. 799), and that under such construction the New York statute was not distinguishable from the statute considered in the Adkins Case. The court says: "There is no blinking the fact that the state court construed the prescribed standard to include cost of living or that petitioner here refuses to accept that construction. Petitioner's contention that the Court of Appeals misconstrued the act cannot be entertained. This court is without power to put a different construction upon the state enactment from that adopted by the highest court of the state. We are not at liberty to consider petitioner's argument based on the construction repudiated by that court.

The meaning of the statute as fixed by its decision must be accepted here as if the meaning had been specifically expressed in the enactment. Supreme Lodge, Knights of Pythias v. Meyer, 265 U.S. 30, 32, 44 S.Ct. 432, 68 L.Ed. 885. Exclusive authority to enact carries with it final authority to say what the measure means. Jones v. Prairie Oil Co., 273 U.S. 195, 200, 47 S.Ct. 338, 71 L.Ed. 602. The standard of 'minimum fair wage rates' for women workers to be prescribed must be considered as if both elements—value of service and living wage—were embodied in the statutory definition itself. International Harvester Co. v. Kentucky, 234 U.S. 216, 220, 34 S.Ct. 853, 58 L.Ed. 1284. As our construction of an act of Congress must be deemed by state courts to be the law of the United States, so this New York Act as construed by her court of last resort, must here be taken to express the intention and purpose of her lawmakers. Green v. Lessee of Neal, 6 Pet. 291, 295–298, 8 L.Ed. 402."

■ In the instant case, however, there is nothing in the definition in the Ohio statute defining "a fair wage" stating or implying that any factor is to be added to the basis of the "reasonable value of the services rendered." Nor has the Ohio Minimum Wage Law been construed by the courts of Ohio to mean, in so far as "a fair wage" is concerned, anything other than what is set forth in the statute itself, to wit, "a wage fairly and reasonably commensurate with the value of the service or class of service rendered." This court, therefore, does not feel bound to follow the construction placed upon the statutes of any other state by the courts of such state.

Considering the Ohio Minimum Wage Law as one fixing as the basis for "a fair wage," one reasonably commensurate with the value of the service or class of service rendered, or as one based solely on the "reasonable value of the services rendered," the court is of the opinion that the act is clearly distinguishable from the act considered in the Adkins Case, and that there is nothing in the Morehead Case to change this view.

■ The Ohio act is not unconstitutional. Complainant is not entitled to the relief for which she prays, and her bill should be dismissed as prayed for by defendants. Order accordingly.