THE PEOPLE OF THE STATE OF NEW YORK ex rel. DALLAS
B. PRATT, Appellant and Respondent, *v.* HENRY M.
GOLDFOGLE et al., as Commissioners of Taxes and
Assessments of the City of New York, Respondents
and Appellants.

Constitutional law — banks and banking — moneyed capital
tax — purpose of statute imposing tax — statute applicable to
year 1923 — moneyed capital which has been employed in
competition with business of National banks taxable though
on date for assessment it was not so employed — statute not
unconstitutional because property subject to tax is fixed not
by State Legislature but by action of Congress in a matter
unconnected with tax — statute not invalidated by failure of
provision for refund of income tax — statute not objectionable
on ground that it provides for arbitrary and unreasonable
classification — statute not unconstitutional for indefiniteness
and uncertainty in description of property to be assessed —
deposit in National bank of part of capital of private banker,
engaged in competition with business of National banks,
taxable under statute — shares of stock purchased as temporary
investment by person engaged in business in competition
with National banks, are " moneyed capital " within definition
of statute — definition of capital to be taxed sufficient for
guidance of assessors — reference to " business " of National
banks means business they are authorized to transact —
" competition " means devotion of moneyed capital with
reasonable continuity and regularity to some branch of business
that may be carried on by National banks — nothing in business
of farm loans and real estate mortgages to differentiate it
from other branches of authorized business of National banks
— burden upon proposed taxpayer to show that part of capital
has been so segregated to other purpose that it should not be
taxed — tax properly assessed upon interest in firm engaged in
general banking, commission and investment business.

1. The purpose of chapter 897 of the Laws of 1923 is to subject
moneyed capital in the hands of private banks and bankers and
individuals and being used in competition with the business of National
banks to the same taxation which is imposed upon shares of the latter
institutions.

2. A contention that the act became a law too late to be applicable
to the year 1923, for which year assessments were made, for the reasons

that it provided that on or before June first of each year the holders of moneyed capital should make reports, and that it was not signed by the Governor and, therefore, did not go into effect until June 1, 1923, cannot be sustained. The provision requiring holders of moneyed capital to file reports was important and was intended to be of substantial assistance to assessing officers but was not so vital that inability to comply with it would prevent the assessors under the other provisions of the act from making what they deemed to be proper assessments and carrying out their provisions.

3. No trouble in making assessments of moneyed capital as of a given date should arise from the fact that on that particular date all of the capital of a taxpayer might not have been in competition with the business of National banks. In the enactment of the statute the Legislature must have contemplated features of continuity and regularity and if, during a period preceding the assessment date, an individual had been the possessor of moneyed capital which was, in accordance with the methods of such business, employed in competition with the business of National banks, that would furnish a basis for assessment even though on a given date such moneyed capital temporarily was not being employed.

4. An argument that the statute is unconstitutional because the property subject to tax depends not upon the legislative body imposing the tax but upon the action of Congress upon a matter unconnected with the tax sought to be imposed is extreme and untenable. Inasmuch as the Legislature had the power to classify the particular kind of property to be taxed by this statute in part by reference to the uses in which it was employed, the exercise of that right would not be invalidated because the use thus described might thereafter be changed or enlarged by custom, usage or Federal statutory provision. The Legislature had the right to make its classification and description of the property flexible so that they would be adjustable to conditions thereafter arising.

5. A claim that the statute has been invalidated because of the form of section 27, providing for refunding income taxes for the year 1922, cannot be upheld. Assuming that this section is unconstitutional either because it does not appropriate money for refunding such income taxes or because it did accomplish an effective refunding of them in violation of the Constitution, this feature does not operate to destroy the statute. The provision is an independent section thereof quite detached in form and operation from its other provisions and it may be assumed that the Legislature would have adopted the other provisions even if it had known that section 27 would not be operative.

6. The statute is not objectionable on the ground that it indulges in arbitrary and unreasonable classification and discrimination. The

power of the Legislature to classify different kinds of property for different methods and rates of taxation, if it treats alike all persons belonging to the same class, is broad and well established and its enactment that all the persons engaged in a certain kind of business should be subjected to a certain rate of taxation was well within its powers.

7. Nor can objections that the statute is unconstitutional because of its indefiniteness and uncertainty in the description of the property to be assessed be sustained. When its provisions, having reference to intangible forms of personal property, speaks of " moneyed capital " and further characterizes such moneyed capital by its use as that kind " which comes into competition with the business of National banks," it gives a description of property to be taxed which is sufficiently understood, definite and explicit for a taxing statute.

8. An argument that a deposit by a private banker of part of his capital in a National bank should not be regarded as competitive moneyed capital under this statute involves a misconception of the deposit and subordinates its actual purpose and function to its temporary form. If a person carrying on a business in competition with National banks elects to maintain part of his capital in the form of a cash reserve and for that purpose deposits it in a National bank that portion of capital does not cease to be employed in competition with such banks.

9. Nor can it be successfully urged that an interest in a corporation carrying on a manufacturing or mining occupation cannot be moneyed capital employed in competition with banks. If a person engaged in carrying on a business competitive with that of National banks elects temporarily to invest part of his capital in the stock of such a corporation for the purpose of furthering his competitive business, such shares of stock are moneyed capital within the definition of the statute,

10. A contention that the phrase in the statute fixing the moneyed capital which is to be taxed as that " coming into competition with the business of National banks " is so general and indefinite as to furnish no sufficient guide to the taxing authorities and that the latter cannot tell what is meant by " competition," cannot be sustained. This definition of the capital to be taxed furnishes a sufficiently definite rule for the guidance of assessors.

11. The reference in the statute to the " business " of National banks means the business which National banks are authorized to transact and not the business which it may appear in any given case of alleged competition a particular bank or group of banks is actually transacting, and the " competition " prescribed means a condition of business rivalry which arises when moneyed capital is devoted with reasonable continuity and regularity to employment and operations which have for their primary and characteristic purpose, as distinguished from some incidental operations and details, the transaction

of some branch of business which may be carried on by National banks. It is not necessary that this employment shall bring capital into competition with all the branches of business which may be transacted by a National bank, but it will be sufficient if it comes into competition with one or more of such branches.

12. There is nothing in the business of farm loans and real estate mortgages which differentiates that branch of authorized business for National banks from other branches, and if moneyed capital in the hands of an individual is employed in making such loans it will come into the competition contemplated by the statute.

13. The statute may not be interpreted as meaning that where capital is set up or generally employed in competitive operations, it is relieved from taxation because not all of it is so employed at all times. Where it appears that capital is set up and used in such competitive employment, from time to time, the burden will rest upon the proposed taxpayer of showing that any part of it has been so definitely and permanently segregated and devoted to some other purpose that it should not be taxed.

14. The relator, therefore, was properly taxed, under such statute, on an interest owned by him in a firm engaged in a general banking, commission and investment business, including amongst other activities the purchase and sale of bills of exchange, accepting deposits from customers who drew thereon by check and bill of exchange, the occasional discounting of commercial paper, acting as a depositary for its customers of stocks and bonds belonging to such customers, the firm retaining such stocks and bonds as collateral and charging the customers interest on such advances, the lending of money in the open market on collateral loans and on time loans and accepting and buying drafts of customers for whom it was acting as selling agent of securities or commodities. (*Mercantile Bank* v. *New York*, 121 U. S. 138; *Merchants' Nat. Bank* v. *City of Richmond*, 256 U. S. 635; *First Nat. Bank* v. *Anderson*, 269 U. S. 341; *Des Moines Nat. Bank* v. *Fairweather*, 263 U. S. 103, followed.)

*People ex rel. Pratt* v. *Goldfogle*, 213 App. Div. 706, affirmed.

(Argued December 14, 1925; decided March 30, 1926.)

CROSS-APPEALS, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 6, 1925, which affirmed an order of Special Term reducing an assessment levied upon intangible property of relator.

*John W. Davis, M'Cready Sykes* and *George L. Shearer* for relator, appellant and respondent.   The act is invalid and unconstitutional because of indefiniteness, lack of uniformity and delegation of legislative power.   (*Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.,* 191 N. Y. 123; *U. S.* v. *Cohen Grocery Co.,* 225 U. S. 81; *People* v. *Briggs,* 193 N. Y. 457; *First Nat. Bank* v. *Anderson,* 196 Ia. 587; *Cotting* v. *Kansas City Stockyards Co.,* 183 U. S. 79.)   The classification attempted by chapter 897 of the Laws of 1923 is in contravention of the Fourteenth Amendment to the Constitution of the United States. (*Air-Way Electric Appliance Corporation* v. *Day,* 266 U. S. 71; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412; *Southern Railway Co.* v. *Greene,* 216 U. S. 400; *Kentucky Railroad Tax Cases,* 115 U. S. 321; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362; *People ex rel. Farrington* v. *Mensching,* 187 N. Y. 8; *McHenry* v. *Alford,* 168 U. S. 651; *People ex rel. Phillips* v. *Raynes,* 136 App. Div. 417; 198 N. Y. 539; *Evansville Bank* v. *Britton,* 105 U. S. 322; *Mercantile Bank* v. *N. Y.,* 121 U. S. 138; *Amoskeag Savings Bank* v. *Purdy,* 231 U. S. 373; *Merchants Nat. Bank* v. *Richmond,* 256 U. S. 635.)   The act is unconstitutional and void, in that the property subject to tax depends, not upon the legislative body imposing the tax, but upon the action of Congress on a matter disconnected from the tax sought to be imposed.   (*Davidson* v. *New Orleans,* 96 U. S. 97; *Clark* v. *Norton,* 49 N. Y. 243; *Stuart* v. *Palmer,* 74 N. Y. 183; *Matter of Fuller,* 34 Misc. Rep. 750; *Freeland* v. *Williams,* 131 U. S. 405; *Holden* v. *Hardy,* 169 U. S. 366; *State* v. *Sponaugle,* 45 W. Va. 415; *Bardwell* v. *Anderson,* 44 Minn. 97; *Gilmer* v. *Bird,* 15 Fla. 410; *Ex parte Macdonald,* 76 Ala. 603.)   The failure of an essential provision, section 27 of the act, through its non-fulfillment of the requirements of section 21 of article 3 of the Constitution of the State of New York, and the violation of section 9 of article 8 of the Constitution,

invalidates the whole act. (*Hauser* v. *North British & Mercantile Ins. Co.,* 152 App. Div. 91; *Berea College* v. *Kentucky,* 211 U. S. 45; *Allen* v. *Louisiana,* 103 U. S. 80; *Rathbone* v. *Wirth,* 150 N. Y. 459; *People ex rel. Western Union Tel. Co.* v. *Roberts,* 30 App. Div. 78; 156 N. Y. 693; *Matter of Waterman,* 33 Misc. Rep. 569; *Rockaway Pacific Corporation* v. *Stotesbury,* 255 Fed. Rep. 345; *People* v. *Westchester Co. Nat. Bank,* 231 N. Y. 465.) The act became a law too late to authorize assessments in the year 1923. (*Jacobus* v. *Colgate,* 217 N. Y. 235; *New York & Oswego Midland R. R. Co.* v. *Van Horn,* 57 N. Y. 473; *Isola* v. *Weber,* 147 N. Y. 329; *U. S.* v. *Heth,* 3 Cranch, 399; *Rhodes* v. *Sperry, etc., Co.,* 193 N. Y. 223; *Chew Heong* v. *U. S.,* 112 U. S. 536; *Minnehaha Nat. Bank* v. *Anderson,* 2 Fed. Rep. [2d S.] 897; *Adams* v. *Bancroft,* Fed. Cas. No. 44; *U. S.* v. *American Sugar Refining Co.,* 202 U. S. 563; *Matter of Kemeys,* 9 N. Y. Supp. 182.) The court below in not allowing as a deduction the full amount of liabilities in effect subjected to the tax a portion of the tax-exempt securities. (*Monroe Savings Bank* v. *City of Rochester,* 37 N. Y. 363; *People ex rel. Savings Bank* v. *Coleman,* 135 N. Y. 231; *People ex rel. Bridgeport Savings Bank* v. *Barker,* 154 N. Y. 128; *People ex rel. Seidenberg Co.* v. *Feitner,* 41 App. Div. 571; *People ex rel. Trust & Deposit Co. of Onondaga* v. *Norton,* 53 App. Div. 557; *People ex rel. Federal Terra Cotta Co.* v. *Purdy,* 189 App. Div. 131; 229 N. Y. 519; *People ex rel. Astoria Light, Heat & Power Co.* v. *Cantor,* 236 N. Y. 417; *People ex rel. Edison El. Ill. Co.* v. *Barker,* 139 N. Y. 55; *People ex rel. Cornell Steamboat Co.* v. *Dederick,* 161 N. Y. 195.)

*George P. Nicholson,* Corporation Counsel (*William H. King* and *Eugene Fay* of counsel), for defendants, respondents and appellants. The Tax Law provisions as amended in 1923 to provide for assessment of owners and holders of moneyed capital coming into competition with the business of National banks are not in contravention of the United States Constitution or the New York State

Constitution because indefinite, impracticable and illusory or because of lack of uniformity or delegation of power. (*Royster Guano Co.* v. *Virginia*, 253 U. S. 412; *Barbier* v. *Connolly*, 113 U. S. 27; *Hayes* v. *Missouri*, 120 U. S. 68; *Mercantile Bank* v. *New York*, 121 U. S. 138; *Aberdeen Bank* v. *Chehalis County*, 166 U. S. 440; *Bank of Commerce* v. *Seattle*, 166 U. S. 463; *First National Bank of Wellington* v. *Chapman*, 173 U. S. 205; *Amoskeag Savings Bank* v. *Purdy*, 231 U. S. 373; *Des Moines National Bank* v. *Fairweather*, 263 U. S. 103; *Village of Saratoga Springs* v. *Saratoga G., etc., Co.*, 191 N. Y. 123; *People* v. *Fire Assn. of Philadelphia*, 92 N. Y. 311.)    The Tax Law provisions are not unconstitutional upon the ground of making an arbitrary and unreasonable classification. (*Bell's Gap Railroad Co.* v. *Pennsylvania*, 134 U. S. 232; *Citizens Telephone Co.* v. *Fuller*, 229 U. S. 322; *Michigan Central Railroad Co.* v. *Powers*, 201 U. S. 245; *Kentucky Railroad Tax Cases*, 115 U. S. 321; *Quong Wing* v. *Kirkendall*, 223 U. S. 59; *Beers* v. *Glynn*, 211 U. S. 477; *Clark* v. *Titusville*, 184 U. S. 330; *Cook* v. *Marshall County*, 196 U. S. 273; *Kinsely* v. *Cotterer*, 196 Penn. St. 614, 630; *Toyota* v. *Hawaii*, 226 U. S. 184.)    There was no systematic and intentional omission by the defendants to assess individuals or corporations owning or holding moneyed capital coming into competition with the business of National banks constituting a violation of the Fourteenth Amendment.    (*Sunday Lake Iron Co.* v. *Wakefield*, 247 U. S. 350; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Scott* v. *McNeal*, 154 U. S. 34; *Chicago, B. & Q. R. Co.* v. *Chicago*, 166 U. S. 226.)    The assessment of individuals and corporations on moneyed capital was authorized and duly made for 1923. (*Locke* v. *New Orleans*, 4 Wall. 172; Cooley on Taxation [3d ed.], 492.) Where individuals or corporations are conducting a business and operations such as National banks in their banking business engage in, then in whatever forms the capital therein is invested, and whether or not such forms are ordinarily classed as moneyed capital, they are to be

included in determining the value of moneyed capital coming into competition with the business of National banks. (*People ex rel. Yellow Pine Co.* v. *Barker*, 23 App. Div. 524; 155 N. Y. 655; *People ex rel. Armstrong Cork Co.* v. *Barker*, 157 N. Y. 159; *British Commercial Life Ins. Co.* v. *Comrs. of Taxes of New York*, 31 N. Y. 32; 28 How. Pr. 41; *People* v. *Commissioners*, 4 Wall. 244.)

HISCOCK, Ch. J. The relator for the year 1923 was assessed under the provisions of chapter 897, Laws of 1923, for an interest owned by him in a firm conducting a banking and other kinds of business, on the ground that it was " moneyed capital  *  *  *  coming into competition with the business of national banks " and not exempt under certain provisions of the statute. Both sides have appealed from the order of the Appellate Division upholding this assessment in a modified amount. The appeal of the taxing authorities involves a question of only minor importance because their complaint is directed to the fact that a single item of property was improperly excluded in fixing the amount of the assessment. The appeal of the relator on the other hand challenges not only the application of the statute for the year in question and the method of computing the assessment but, much farther than this, attacks the validity of the statute for alleged unconstitutionality manifested in various ways. He complains that the statute is unconstitutional because it is so indefinite in its description of the property to be assessed that it cannot be intelligently enforced by assessors; that it indulges in arbitrary and unreasonable classification and discrimination; that the property subject to tax is fixed not by the State Legislature but by action of Congress in a matter unconnected with the tax sought to be imposed; that there is failure of a refunding provision of the statute which is so essential to the act as an entirety that it must be assumed that the Legislature would not have enacted the statute except for the belief that this par-

ticular provision could be carried out. Thus we have many questions to consider.

The facts found by the trial court defining the status of relator as an alleged taxpayer under this statute and giving rise to these questions have been unanimously affirmed by the Appellate Division and they are, therefore, binding upon us and do not present some of the minor questions which the relator attempts to argue. Of the facts thus found the ones to which especial reference is necessary are as follows: On and before May 1, 1923, the relator was a member and the owner of an interest of thirty-two per cent in a firm which " was engaged in a general banking, commission and investment business, the activities of the firm including the purchase and sale of bills of exchange, accepting deposits from customers who drew thereon by check and bill of exchange, the occasional discounting of commercial paper, the purchase and sale of investment securities consisting of bonds and stocks of corporations, the making of subscriptions for original issues of bonds and stocks in syndicate transactions, acting as a depositary for its customers of stocks and bonds belonging to such customers, the firm retaining such stocks and bonds as collateral and charging the customers interest on such advances, the lending of money in the open market on collateral loans and on time loans and accepting and buying drafts of customers for whom it was acting as selling agent of securities or commodities, the activities of the firm including the purchase and sale of commodities such as hides, coffee, etc., for customers on commission." " The moneyed capital of such firm (amounting to \$511,673.02) was available on May 1, 1923, for any business activities, but the amount and form of such moneyed capital employed in any one of such activities was constantly changing." Amongst the assets was a small item of \$448.83 described as a " coffee account " and the nature of which does not definitely appear; a Stock Exchange seat valued at \$93,000 and bonds and stocks aggregating

in value somewhat more than $2,250,000. " The tax exempt securities as well as the bonds and stocks of the firm were available to be used from time to time as collateral security for indebtedness of the firm and in the business and transactions of the firm and the amount and kind of such tax exempt securities and of other bonds and stocks changed from time to time." " The firm conducted business which competed with the business of national banks " and " the relator owned moneyed capital in competition with the business of national banks."

The statute, which we are brought to consider, in its practical aspects represents an attempt on the part of the State to secure the right to tax shares of National bank stocks by complying with the requirements imposed by Congress as a condition of permitting State taxation of shares in these institutions which, of course, are an agency of the Federal government, and a brief history of legislation as an introduction to the present situation is appropriate.

Section 5219 of the Revised Statutes of the United States as framed in 1868 provided that nothing in the National Bank Act should be construed as prohibiting the assessment and taxation by the State of shares in any National bank subject only to the two restrictions that the taxation should not " be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State " and that the assessment should be made in the locations as therein specified. These provisions were interpreted by the Supreme Court of the United States as prescribing, if the States desired to tax the stock of National banks, the rate of taxation to be imposed upon other moneyed capital competing with the business of National banks and not as relating to personal investments not engaged in such competition. (*Mercantile Bank* v. *New York,* 121 U. S. 138.) As the result of unsuccessful attempts upon the part of States to effect a taxation of National bank shares and as the result of insistent agitation on their part, Congress in

1923 undertook the task of amending section 5219 referred to in such a manner as should make it conform to the interpretation placed upon it by the Supreme Court and as should afford definite and reasonable requirements to be complied with by the States as a condition of taxing National bank shares. As thus amended and as controlling in the disposition of this case it permitted States to tax shares of National banks at the locations therein specified in any one of three methods. The first of these methods and which is the one here under consideration, was covered by a provision reading as follows: " (B) In the case of a tax on said shares [National banking shares] the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of National banks; Provided, That bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business shall not be deemed moneyed capital within the meaning of this section."

Prior to the adoption in this amended form of section 5219 the State of New York had made an attempt to tax National bank shares. It had subjected such shares to a tax of one per cent on their book valuation (Tax Law; Cons. Laws, ch. 60). Then by the Personal Income Tax Law (Laws of 1919, ch. 627) it had provided that the income consisting of dividends paid upon such banking shares should also be taxed and at the same time it had exempted large amounts of intangible personal property from the valuation taxation which was imposed upon the banking shares. Under these circumstances it was held that this legislation discriminated against National bank shares, was in violation of the Federal statute and invalid. (*People ex rel. Hanover National Bank* v. *Goldfogle*, 234 N. Y. 345.) After this decision and after

the amendment of section 5219 in 1923 the Legislature again attempted to effect the right to tax National bank shares by complying with the requirements of section 5219 as amended and in this attempt adopted chapter 897 of the Laws of 1923, now before us for consideration.

The purpose of this statute was to subject moneyed capital in the hands of private banks and bankers and individuals and being used in competition with the business of National banks to the same taxation which was imposed upon shares of the latter institutions.   It sought to accomplish this purpose through amendment of the General Tax Law, amending various sections thereof and adding new ones.   It is unnecessary for us to consider at this point all of these amending and new provisions.   They provide for making assessments in legal manner, giving the taxpayer the necessary opportunity to be heard and section 14, as amended, is a vital provision in the new plan of taxation which presents the basis for the more important constitutional objections which are urged by the relator.   This section is entitled " Owners or holders of moneyed capital other than shares of banks and trust companies taxable on such moneyed capital " and continues: " Every individual banker and private banker, every investor and every person and every association or corporation, other than banks or trust companies, owning, or, as agent, trustee, guardian, executor or administrator, holding moneyed capital coming into competition with the business of National banks except shares of National banks or of banks or trust companies organized under the authority of this State, and except bonds, notes or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall be assessed and taxed on the actual value of such moneyed capital in the tax district where such owner or holder

resides " and which tax it is elsewhere provided shall be at the same rate as that imposed upon shares of National banks. It will thus be seen that the statute does not attempt to specify the different classes of property which shall be taxable as moneyed capital but simply adopts the language of the Federal statute that the property shall be moneyed capital coming into competition with the business of National banks.

We shall consider first those objections to the validity of the assessment which, however decisive they might be of this appeal, are of minor importance in comparison with those objections which attack the statute as irremediably invalid for constitutional reasons.

It is contended that the act became a law too late to be applicable to the year 1923 for which year assessments were made; that the method of computing the assessment was erroneous and that a provision for the refunding of taxes on personal income for the year 1922 was defective and thus destroyed and invalidated the entire act. We do not think that these contentions are well made. The claim that the act was not applicable for the year 1923 must rest upon a single feature. The act passed the Legislature May 5, 1923, but it was not signed by the Governor until June 1, 1923. It declared that it should take effect immediately and modifications of other forms of taxation make it clear that it was the intent of the Legislature that it should be applicable to the year in which it was passed. It fixed as the taxable status date May first, provided that on or before June first of each year the holders of moneyed capital should file reports and as of various dates commencing August first made complete provision for the lawful assessment and fixation of a tax including a proper opportunity to those assessed to be heard in complaint against the assessment. There was nothing retroactive about the act. It, of course, was compelled to take as

19

a taxable status date one early enough in the year to leave time for the completion of the assessment. That did not make the assessment one for the preceding year. The only defect in the statute in respect of dates is the one that June first was fixed as the date for filing reports and that through gubernatorial delay the bill did not become a law until that date, therefore precluding the possibility of compliance with the statute in this respect. While this discrepancy in dates would, of course, relieve holders of moneyed capital from the infliction of penalties prescribed in the act for failure to comply with the requirement for filing reports, it did not in our judgment work such an essential failure of the act as to nullify it for the year in question. The provision requiring holders of moneyed capital to file reports was important and was intended to be of substantial assistance to assessing officers but we do not think that it was so vital that inability to comply with it would prevent the assessors under the other provisions of the act from making what they deemed to be proper assessments and carrying out the provisions of the act. By providing penalties for failure to file reports the act contemplated that assessors might be compelled to act without such reports. Other sources of information were open to them and it was their duty to function as well as they could. The taxpayer was protected for if assessed at what he thought was too high a figure the opportunity was afforded to him of seeking correction.

We do not spend time in discussing the methods employed by the trial court in computing the amount of moneyed capital upon which relator was assessable under the statute for under the stipulation which was filed and on the findings which have been made we think that computation was correct and is sufficiently explained in the opinions below. We see no such trouble as has been suggested in making these assessments of moneyed capital as of a given date. It is true, of course, that on

that particular date all of the capital of a taxpayer might not be in competition with the business of National banks. Some of it might be lying idle and some of it might have been diverted temporarily to other uses but in providing for the assessment of moneyed capital as we shall point out and in the enactment of the statute under review the Legislature must have contemplated features of continuity and regularity and if, during a period preceding the assessment date, an individual had been the possessor of moneyed capital which was in accordance with the methods of such business employed in competition with the business of National banks, that would furnish a basis for assessment even though on a given date such moneyed capital temporarily was not being employed. The findings of the trial court cover this feature of this case for, as has been stated, after finding in an appropriate way what the moneyed capital of said firm was it found that such moneyed capital was " available on May 1st, 1923, for any business activities." In other words being the possessor for a period prior to the assessment day of an amount of moneyed capital and the firm being engaged in carrying on various lines of business which undoubtedly were competitive with the business of National banks it held all of this moneyed capital for use on that date in these competitive lines and thus, as it seems to us, clearly brought itself within the meaning of the statute.

It is urged that the statute is unconstitutional, *first,* because, as stated in the relator's brief, " the property subject to tax depends not upon the legislative body imposing the tax but upon the action of Congress upon a matter unconnected with the tax sought to be imposed," and, *second,* because its classification of property to be taxed is arbitrary and unjustifiable. It seems to us that there is no sound basis for either of these contentions.

The first claim rests upon the reasoning that the Legislature has abdicated its powers and violated the

Constitution by providing that the capital to be taxed must be in competition, with the business of National banks and which business may be enlarged or diminished by act of Congress, thus giving to that body the indirect power to determine what shall be the subject of this taxation. We are unable to accept this view which seems extreme and untenable. If we are right, as we have no doubt we are, that the Legislature had the power to classify the particular kind of property to be taxed by this statute in part by reference to the uses in which it was employed, the exercise of that right would not be invalidated because the use thus described might thereafter be changed or enlarged by custom, usage or Federal statutory provision. The Legislature does not surrender any of its essential and constitutional powers. It declares the taxation, fixes the rate and describes the property to be taxed and in doing this we believe it had the right to make its classification and description of the property flexible so that they would be adjustable to conditions thereafter arising rather than that it was compelled to adopt a new statute every time that some change in the business to be transacted by National banks was made. The classification and description are complete; the extent of the property to be included within the classification may be changed but that is a minor incident. The case of *People* v. *Fire Association of Philadelphia* (92 N. Y. 311) instead of being an authority for relator's contention is one quite decisively against it.

The claim that the statute has been invalidated because of the form of section 27 providing for refunding income taxes for the year 1922 seems to us to take rather inconsistent forms. *First,* it is urged that this provision was a vital one; that it failed to comply with the Constitution because it did not make appropriation for paying the taxes to be refunded and, therefore, destroyed the statute, and, *second,* it is argued that the section because it did provide for the refunding of these taxes violated the

Constitution and rendered the entire statute invalid. The first contention is based on the theory that a refund of income taxes for the year 1922 was essential to avoid double taxation and that an appropriation should have been made by the act, and was not made, for repaying these taxes, and that unless it believed such provision had been made the Legislature would not have passed the act. Under the provisions of the State Income Tax Statute it is possible that there may have been some cases of double taxation through payment of income taxes for 1922 and the taxation of moneyed capital for the year 1923, but if we should assume that there were in exceptional cases double taxation which the Legislature intended to correct and that this section was unconstitutional either because it did not appropriate money for refunding income taxes or, under the contrary view, because it did provide for an effective refunding of them in violation of the Constitution, we do not think that this feature operated to destroy the statute. It is conceded in relator's brief as is plainly the case that " this is an independent section of the act of 1923 itself." It is quite detached in form and operation from the other provisions of that act and we think we are entirely justified in assuming that the Legislature would have adopted the other provisions of the act even if it had known that section 27 would not be operative. The history of the attempts of our Legislature to tax National banking capital displays quite a determined attitude. Its latest prior attempt to accomplish this end had been declared invalid by this court and when a new process or method was opened to it by the Federal statute of 1923 we are utterly unable to believe that the Legislature would have refrained from adopting a statute designed to comply with the Federal statute and secure the desired taxation even if it had known that the attempt at refunding of taxes outlined in the section under consideration would prove ineffective.

This brings us to the constitutional objections to the statute which are fundamental and, if well made, are probably fatal to this form of taxation.

The power of the Legislature to classify different kinds of property for different methods and rates of taxation, if it treats alike all persons belonging to the same class, is so broad and well established that we see no such constitutional objection to the present classification as is claimed. Independent of the fact that the Legislature had the right to take into consideration a policy of taxation which would secure the privilege of taxing the National bank shares, its enactment that all the persons engaged in a certain kind of business should be subjected to a certain rate of taxation was well within the principles laid down by many authorities. (*People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431; *People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *Matter of Keeney*, 194 N. Y. 281; *Hermitage Co.* v. *Goldfogle*, 204 App. Div. 710; affd., 236 N. Y. 554; *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S. 232, 237; *Quong Wing* v. *Kirkendall*, 223 U. S. 59; *Cook* v. *Marshall County*, 196 U. S. 261, 273; *Heisler* v. *Thomas Colliery Co.*, 260 U. S. 245.)

There remain the objections that the statute is unconstitutional because of its indefiniteness and uncertainty in the description of the property to be assessed, and it would be disingenuous to deny that these are the most formidable objections to its validity. Giving to them, however, the careful consideration which they deserve and have received in the elaborate briefs filed by counsel, a majority of the court have reached the conclusion that they are not sustained.

It seems to us that when this statute having reference to intangible forms of personal property speaks of " moneyed capital " and further characterizes such moneyed capital by its use as that kind " which comes into competition with the business of national banks," it gives a description of property to be taxed which is

sufficiently understood, definite and explicit for a taxing statute. I presume that moneyed capital in its primary and simplest sense would mean capital consisting of money. But, of course, capital which is to be devoted to the prosecution of some business cannot be kept in cash but must find its way into other forms of investment which are representative of or substitutes for money and when it is further added by the present statute that such forms of moneyed capital are to be those which come into competition with the banking business we are still further guided in reaching a definition by consideration of the business which National banks transact as fixing and determining the moneyed capital which may naturally come into competition. We are not at this point considering *when* moneyed capital is to be considered as in competition. That consideration comes later. We are here only considering the feature of competition, that is use, as fixing the *kind* of property referred to. It is perfectly familiar that the business of National banks deals with, and consists of, the acquisition of bills, notes, obligations for loans and other instruments for the payment of money and securities consisting of bonds whether long or short term and sometimes results in the acquisition of interests in other corporations or associations represented by negotiable or quasi-negotiable certificates of stock. These are the operations which they carry on. Moneyed capital coming into competition with this business will naturally and usually take these same forms of investment and employment. Therefore, when we add to the descriptive feature that the property assessable shall be moneyed capital the other characteristic of the use to which it shall be put, we think that the definition becomes definite and will be well understood. Moneyed capital coming into the prescribed competition will be of the *kind* which we have enumerated plus, possibly, some forms of the same general character which we have inadvertently failed to include. Quite obviously it will not include

## 296    People ex rel. Pratt v. Goldfogle.

such an item of property as relator's rights in a membership in the Stock Exchange.

We stop to give special consideration to two forms of property which it has been argued should not be regarded as competitive moneyed capital under this statute. The first of these is a deposit by a private banker, for instance, of part of his capital in a National bank, it being said that such a deposit could not possibly be regarded as moneyed capital in competition with the business of the bank in which the deposit was made. We think this view involves a misconception of the deposit and subordinates its actual purpose and function to its temporary form. If a person carrying on a business in competition with National banks elects to maintain part of his capital in the form of a cash reserve and for that purpose deposits it in a National bank we do not think that this portion of capital ceases by any means to be employed in competition with the National banks. The deposit is made for the very purpose of strengthening and protecting the competitive business.

In the second place it is urged that an interest in a corporation carrying on a manufacturing or mining occupation cannot be moneyed capital employed in competition with banks and support is sought for that proposition in various opinions of the Supreme Court. It may be conceded that if the only fact appearing was that a person held stock in such a corporation it would not be moneyed capital of the kind described by the statute. In fact the exemptions of the statute express this idea. But if a person engaged in carrying on a business competitive with that of National banks elects temporarily to invest part of his capital in the stock of a manufacturing corporation represented by an ordinary certificate either because in that way he is able for the time being to secure a greater return on his capital than he would be able to by loaning it on discounts, or because he regards such shares of stock as a desirable form in which to

invest part of his capital because of the readiness with which such a certificate may be converted into cash or used as collateral, we think that such shares of stock are moneyed capital within the definition of the statute. In other words, the use as well as the form of a given security may fix its character as taxable within the definition of this statute.

We think that the definition of the words of the statute which we have formulated embodies a meaning which has been quite definitely given to them by decisions of the Supreme Court. The leading one of these cases is that of *Mercantile Bank* v. *New York (supra)*. The court in that case was interpreting the statute as enacted in 1868 which prohibited the assessment of National bank shares at a higher rate than other moneyed capital and said nothing about such capital being in competition with the business of National banks. It, however, assumed that the statute had reference to moneyed capital which was in such competition and, therefore, by interpretation gave to the statute a meaning substantially the same as that expressed by the present one. The question which the court was considering on the complaint by a National bank of unjust discrimination was whether persons holding an interest in corporations engaged in carrying on manufacturing and related businesses, were holders of moneyed capital within the meaning of the statute, it not appearing that such interests were being used as part of a capital engaged in carrying on a business in competition with banks. It was held that they were not and the court made it plain that the character of capital as being moneyed within the meaning of the statute was to be in part determined by the use to which it was being put. After referring to the operations carried on by National banks it was said: " These are the operations in which the capital invested in National banks is employed, and it is the nature of that employment which constitutes it in the eye of this

statute ' moneyed capital.' Corporations and individuals carrying on these operations do come into competition with the business of National banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of Congress." And again: " The terms of the act of Congress, therefore, include shares of stocks or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and re-investment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property."

In *Merchants' National Bank* v. *Richmond* (256 U. S. 635) the court again considering the question under the present statute whether National bank stocks were assessed at a higher rate than other moneyed capital coming in competition with said banks under a Virginia statute, held that there was such discrimination and in reaching this conclusion said that the words " moneyed capital " included " not only monies invested in private banking, properly so-called, but investments of individuals in securities that represent money at interest and other evidences of indebtedness such as normally enter into the business of banking."

And in the latest decision by the Supreme Court upon this subject (*First National Bank of Guthrie* v. *Anderson*, 269 U. S. 341) it is said that " The term ' other moneyed capital ' in the restriction (Sec. 5219) is

not intended to include all moneyed capital not invested in national bank shares, but only that which is employed in such way as to bring it into substantial competition with the business of national banks  *  *  *.  Moneyed capital is brought into such competition where it is invested in shares of state banks or in private banking; and also where it is employed, substantially as in the loan and investment features of banking, in making investments, by way of loan, discount or otherwise, in notes, bonds or other securities with a view to sale or repayment and reinvestment."

And then finally we come to the claim made by the relator that the phrase in the statute fixing the moneyed capital which is to be taxed as that " coming into competition with the business of national banks " is also so general and indefinite as to furnish no sufficient guide to the taxing authorities and that the latter cannot tell what is meant by " competition."   Again we disagree with the relator's contention and reach the conclusion that this definition of the capital to be taxed furnishes a sufficiently definite rule for the guidance of assessors although, of course, realizing that at times there may be difficulty in determining whether the facts of a particular case bring it within the rule, however well defined the latter may be.

It will furnish a desirable basis for the consideration of this question if, at the outset, we place before our minds the business which National banks are authorized to carry on.   Such a bank is authorized " To exercise by its Board of Directors or duly authorized officers or agents subject to law all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes according to the provisions of this

title " (Section 5136, U. S. Revised Statutes, as amended in 1922); also, "Any national banking association not situated in a central reserve city may make loans secured by improved and unencumbered farm land situated within its Federal Reserve District or within a radius of one hundred miles of the place in which such bank is located, irrespective of district lines, and may also make loans secured by improved and unencumbered real estate located within one hundred miles of the place in which such bank is located, irrespective of district lines," subject to certain restrictions upon the amount and time of such loan (Sec. 24, Federal Reserve Act, as amended by ch. 461 of the Laws of 1916); also such a bank if located in any place containing less than 5,000 inhabitants may act as insurance agent and real estate agent or broker in procuring and making loans on real estate within 100 miles of its place of business and by permission of the Federal Reserve Board such a bank may act as trustee, or executor, administrator, etc. (Ch. 461, Laws of 1916, and act of September 26, 1918.) The powers thus conferred are comparatively few in number and are so well defined by common experience and observation that there is little opportunity for uncertainty concerning their nature and scope. In addition some of them may be disregarded in this discussion, for they permit the rendition of services rather than the transaction of business, with which other moneyed capital might come in competition.

The first question of importance which suggests itself in construing the reference of the statute to the " business " of National banks is the one whether the statute means the business which National banks are authorized to transact or the business which it may appear in any given case of alleged competition a particular bank or group of banks is actually transacting; whether the basis of this test is potential business or actual transactions. We think that the former interpretation is to

be placed upon the statute and that it was the intent of Congress and of the Legislature that this test of taxation should be the one whether moneyed capital was engaged in competition with the business which National banks are authorized to carry on rather than the one whether it was being used in operations which brought it into direct competition with actual transactions then and there being carried on by a National bank. There are two reasons for this view. If in a given case of proposed assessment and taxation of moneyed capital in the hands of a private individual engaged in the business of discounting notes or making farm loans it were necessary to ascertain whether any National bank was actually carrying on a similar business by making loans upon notes or mortgages in the same locality, the complications and difficulties of enforcing the statute would be so great as to substantially impair if not destroy its practicability and enforcibility. It would indeed be an endless task if in proposing to tax moneyed capital employed in the business of making loans in a given territory assessors were compelled to investigate and determine whether National banks were making loans in that same territory under such conditions as produced business competition, and we cannot assume that either Congress or the Legislature intended to enact futile legislation. But in addition to this we must interpret the statute in the light of the purpose which led to its enactment. The Federal statute concededly proposed to protect the business of National banks from the handicap which would follow if their shareholders were taxed at a greater rate than was imposed upon competing moneyed capital in the hands of individuals and we must assume that our Legislature fully recognized and intended to comply with the requirements imposed by the Federal statute to prohibit such handicap as a condition of allowing taxation of National bank shares. This purpose seems to us to require an interpretation which protects generally the business

which National banks are authorized to carry on and may at any time engage in and not the business represented by actual transactions occurring at any particular time or place. Certainly the statute would utterly fail of its purpose if, as the result of discriminatory taxation, a National bank had been driven or kept out of a particular line of business in some locality by other moneyed capital and it then could be said that there was no competition by the latter with the former requiring equality of taxation.

So we think that there can be no substantial uncertainty about the business of National banks which may become the subject of competition, and we consider what is meant by competition as applied to moneyed capital in this connection. It seems to us that such meaning is clear and that the controlling characteristics of such competition are not doubtful. We at once conclude that the competition here prescribed means a condition of business rivalry which arises when moneyed capital is devoted with reasonable continuity and regularity to employment and operations which have for their primary and characteristic purpose, as distinguished from some incidental operations or details, the transaction of some branch of business which may be carried on by National banks. It is not necessary that this employment shall bring capital into competition with all the branches of business which may be transacted by a National bank, but it will be sufficient if it comes into competition with one or more of such branches. Nor as we have stated will it be necessary that the competition arise with actual transactions being conducted by a National bank but it will be sufficient if such capital engages in rivalry with the business which such a bank is authorized to conduct. We are led to emphasize somewhat this last proposition because of the argument made by relator in respect of farm loans and real estate mortgages which are subject to certain limitations, but we see nothing in that branch of authorized business which differentiates it from other branches.

It is true that certain banks are prohibited from making such loans and that there are certain territorial limitations upon all banks, but we should think that there would be no territory in which some National banks could not take such mortgage loans and, therefore, if moneyed capital in the hands of an individual is employed in making such loans it will come into the competition contemplated by the statute.

Our interpretation of competition as meaning an employment of moneyed capital whose characteristic and principal purpose brings it into rivalry with the business of banks is illustrated by companion appeals now before us in cases where assessments of moneyed capital have been set aside as unauthorized by the statute. These are cases where assessments were made of capital employed by individuals in the business of stockbrokers and at times in carrying stocks for customers on a margin; in dealing in corporate bonds; in the factorage business wherein moneys are advanced to manufacturers; in the business of purchasing conditional sales contracts, etc., calling for payments of installments. In none of these businesses was the primary and characteristic purpose for which the moneyed capital was employed one which was in competition with any branch of business which National banks are authorized to conduct but whatever supposed competition there was in the way of loaning money was indirect and remote and was simply incidental to the main business which was not a competitive one and, therefore, the moneyed capital employed under such circumstances did not come within the meaning of the statute. Our construction of the statute as meaning a competition which is something more than isolated or sporadic transactions is evidenced by the provisions of the statute itself when it provides that " bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal invest-

ments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." It is also sustained by some of the things which were said in the case of *Mercantile Bank* v. *New York* (*supra*) where, after referring to the business of banking as defined by law and custom, it is said: " These are the operations in which the capital invested in national banks is employed, and it is the nature of that employment which constitutes it in the eye of this statute ' moneyed capital.' Corporations and individuals carrying on these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of Congress." And it also finds, support in what was said by this court in considering another statute but which nevertheless is applicable in a general way to the present statute. In *Penn Collieries Co.* v. *McKeever* (183 N. Y. 98) the court had under consideration whether a foreign corporation was " doing business in this State " so that it was required to procure a certificate of authority to transact business and it was there said: " To bring into operation the statutory provision the facts should show more than a solitary, if not accidental, transaction as was the one before us. They should establish that the corporation was conducting a continuous business. To be ' doing business in this State ' implies corporate continuity of conduct in that respect; such as might be evidenced by the investment of capital here, with the maintenance of an office for the transaction of its business, and those incidental circumstances, which attest the corporate intent to avail itself of the privilege to carry on a business. In short, it should appear, as it was intimated in the opinion in *People ex rel. Armstrong Cork Co.* v. *Barker* (157 N. Y. 159, 165), that the corporation and its officers intended ' to establish a continuous business in the city of New York and not one of a temporary character.' "

It would be difficult and we shall not attempt to catalogue in advance the specific circumstances and features which will establish a competitive use of capital which is so substantial, continuous and regular and so distinguishable from isolated transactions as to bring it within the contemplation of the statute. We believe that in the great majority of cases the facts will be decisive enough to avoid any great doubt. For instance we see not the slightest doubt that the business in which this relator is interested and for which he is being taxed does possess those features of continuity, regularity and stability which make it a competitive business. On the other hand, the individual who from time to time for the sake of investing his money takes a mortgage, buys a bond or a hundred shares of stock clearly would not be engaged in competitive business. Between those extremes there may be some doubtful cases but if so they can be dealt with when they arise.

We do not overlook the suggestion that the moneyed capital set up for the conduct of a given business may be partly employed in transactions which are competitive with the business of National banks and partly in business which is not so competitive. This situation may from time to time present some difficulty in the interpretation of a specific set of facts but we do not interpret the statute as meaning that where capital is set up or generally employed in competitive operations, it is relieved from taxation because not all of it is so employed at all times. We think that where it appears that capital is set up and used in such competitive employment from time to time the burden will rest upon the proposed taxpayer of showing that any part of it has been so definitely and permanently segregated and devoted to some other purpose that it should not be taxed. The findings in this proceeding do not present any such situation.

We think that the views which we have expressed are

20

sustained directly and indirectly by decisions of the Supreme Court to which we have referred and also by the case of *Des Moines Nat. Bank* v. *Fairweather* (263 U. S. 103). In that case there was upheld the validity of an Iowa statute enacted before section 5219 of the United States Revised Statutes was amended by adding the clause describing moneyed capital as that " in competition with the business of banking." The Iowa statute, like the one now before us, provided amongst other things for the assessment of property which was simply described as " moneyed capital " and its validity was upheld. It is true that many of the constitutional objections urged to the present statute do not seem to have been stressed in that case, but the fact that the statute was upheld by the Supreme Court on the apparent assumption that it was not subject to such defects as are now alleged makes it an authority entitled to some consideration in the present case.

We fully appreciate that in the enforcement of this statute perplexing questions may arise whether given cases come within its terms and that in attempting to solve these questions administrative officials may make determinations which will be conflicting. That is not an unusual experience. Even juries have been known to render contradictory verdicts upon substantially similar evidence. The fact that a statute is difficult of application and that the administration of a definite rule does not always lead to uniform results has never been regarded as a reason for holding the statute unconstitutional. The statute prescribes the rule of conduct; the administrative officials decide as a matter of fact whether a given case comes within the rule and they may commit errors and differ in their conclusions. It would be difficult to find any statute which has given more trouble in its application than our Workmen's Compensation Act providing that an accident for which compensation may be allowed to an employee must arise " in the course of his employ-

ment." The rule is perfectly definite; its application is troublesome. The reports are filled with decisions determining that a given accident was or was not within the terms of the statute but no one has seriously contended that this feature rendered the statute unenforcible. Courts have been engaged in determining its application and correcting errors which have been made by the board appointed to carry it out and we have no doubt that the same result will be accomplished in the case of this statute and that the forebodings of those who question its validity will be largely eliminated. It very likely may happen that the typical and ordinary application of its provisions will be found in the cases of those who are employing moneyed capital to carry on a private banking business or business akin thereto. But however this may be the courts will be open to correct any unjustified application of its provisions and any unauthorized assessment.

It represents a deliberate and carefully considered attempt of the State to secure a fair and equitable assessment of National bank shares through compliance with the requirements and conditions imposed by Congress. It may be that that body with greater consideration of the rights of the States might have prescribed more simple standards and tests. But this it has not done and unless this statute in constitutional form embodies its conditions it is difficult to see how any statute can be framed which will do so, for, of course, it would be impossible for a statute in advance to prescribe in detail all of the kinds and forms of moneyed capital which should be considered in competition with the business of National banks.

Certainly under such circumstances this court ought to be reluctant to hold that the statute is so vague, indefinite and defective that it is constitutionally unintelligible and unenforcible. We do not think that it is.

The order appealed from should be affirmed, without costs.

CRANE, J. (concurring). If the holders of National bank shares were here opposing a State tax upon the ground that other moneyed capital coming in competition with the business of National banks had not been taxed, we would, I think, be obliged to hold that the State statute in question did tax such other capital in accordance with the provisions of section 5219 of the United States Revised Statutes, as amended in 1923. In other words, from the standpoint of the National banks it could not be claimed successfully that there was other moneyed capital coming into competition with them which was not taxed. That the State statute was so vague that other moneyed capital might escape taxation could not be pressed by the National banks.

I say this in view of my construction of the Revised Statutes as interpreted by the United States Supreme Court. The aim and purpose of Congress was to prevent an attempt upon the part of the States to give preference to State institutions and to legislate against the interests, welfare and development of National banks. In so far as the States did not make any such attempt, but honestly tried to treat all moneyed capital similarly employed in the same fashion, tax legislation of National banks was constitutional. This allowed for many inequalities. Taxation is a practical matter. Absolute equality can never be obtained. Inequalities arising because the deduction of debts was allowed in one instance and not in the other, or due to investment in exempt securities allowed in the one instance and not in the other, or from exemptions of certain capital investments due to a well-defined State policy to encourage certain classes of institutions have not brought the State taxing statutes within the condemnation of the United States Supreme Court. It seems to me as though the evil aimed at was an act which as a fact created a substantial preference for other moneyed capital, evidencing an intent to favor other persons or institutions in preference to National banks.

If this be true, then there will be many instances where in carrying out the State tax statute, other moneyed capital may in minor instances escape taxation. Or by the ruling of the tax officers acting in good faith, some minor part of other capital may be improperly considered as not competing when in fact it does. Such mistakes would not lead to declaring the entire tax upon National bank shares illegal. If, as a fact, the State has attempted to tax all other moneyed capital coming into competition with National banks, and there has been a substantial compliance with the act of Congress, the fact that in attempting to administer the law some immaterial portion may have escaped taxation will not relieve the banks.

Unless we adopt this view of the law we must admit that the provisions of the Revised Statute here in question can never be complied with. I do not see how it is possible for the Legislature to begin to itemize businesses and activities which would include all moneyed capital coming into competition with National banks. It could mention State banks, trust companies and individual bankers. But this would be insufficient, as there is other capital which may also come in competition with the banks. The State has recognized this, and attempted to comply with the rulings of the United States Supreme Court in this particular. It has, therefore, left it as a fact to be determined by the taxing commissioners whether from the business as carried on, the moneyed capital invested comes in competition with the activities of National banks.

And I do not agree that we have been left without a guide in this particular. The United States Supreme Court has defined the principal business of National banks and has stated what in its opinion constitutes other moneyed capital coming in competition with this business. When the Congress, therefore, in re-enacting and amending section 5219 used the words " other moneyed capital coming in competition with the business

of national banks," it is supposed to have adopted the meaning given to these words by the United States Supreme Court in *Mercantile Bank* v. *New York* (121 U. S. 138, p. 156) for the reason that all subsequent decisions have repeated the explanation and meaning given in this case. It was there said: " The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations. These are the operations in which the capital invested in national banks is employed, and it is the nature of that employment which constitutes it in the eye of this statute ' moneyed capital.' Corporations and individuals carrying on these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of Congress." Here we have the principal business of National banks defined. Other moneyed capital *which as a business* is used to make money in any of these activities comes in competition with the National banks. That the National bank may subsequently in some places or under certain conditions be permitted to act as insurance broker, real estate agent, or loan money on bond and mortgage does not make the capital of every insurance broker or real estate agent or mortgage company come in competition with it within the meaning of this statute. As a fact, it may so compete in a minor degree, but it does not practically do so for the purpose of taxation. If this be not so, then Congress has done a futile thing in permitting the States to tax National bank shares as other moneyed capital is taxed. Given the privilege, it can never be

exercised because other moneyed capital is too uncertain of definition, and competition becomes too attenuated to take substantial form. Congress had something in mind of a practical nature. It meant that the bank shares could be taxed, provided that other moneyed capital used as a business in the way that National banks usually and customarily use their capital, is equally taxed. Provided there be a substantial compliance not an exact or a full and complete, but a substantial compliance, an honest endeavor to reach other moneyed capital so used, the tax of National bank shares is legal. (*Amoskeag Savings Bank* v. *Purdy*, 231 U. S. 373, 388; *Merchants' National Bank* v. *Richmond*, 256 U. S. 635; *Des Moines Nat Bank* v. *Fairweather*, 263 U. S. 103, p. 116.)

I have reasoned from the standpoint of the National banks. We turn now to the position of the respondents in this case — the " other moneyed capital people "— who claim that the State Tax Law is unconstitutional, in that it is too vague for enforcement and that the Tax Commissioners have no proper guide by which to determine the other moneyed capital in competition with National banks. If the United States Supreme Court has furnished a sufficient plan and guide by which to determine whether other moneyed capital comes in competition with the principal business of National banks, thus declaring the National bank tax either legal or illegal, it seems to me as though the reverse of the proposition must be true, and that such plan and guide is sufficient for the States to use in determining what is other moneyed capital coming in competition, and, therefore, taxable under a like rate. A definition definite enough to avoid a tax on bank shares ought to be definite enough to impose a tax on moneyed capital. If the State Legislature in attempting to tax other moneyed capital had used the words of the decisions in stating what that other moneyed capital was, and when it came

in competition, would we then say that it was indefinite and unconstitutional? I think not. This in effect is what our State statute does, as section 5219 of the United States Revised Statutes must be read in the light of the decisions.

Now I recognize that the opinions of the United States Supreme Court bearing upon this matter are not hard and fast rules and that the language must be taken not only in the light of the times, but also in view of the facts presented in each particular case. My point, however, is that all these decisions seem to point to a practical and substantial endeavor to give force to the words of the Revised Statutes, that is, to permit the States to tax National bank shares, when the attempt is made in good faith, and in a substantial manner to take in all other moneyed capital in competition under a like tax. This gives room and place for some inequalities in the taxation of moneyed capital which must result in enforcement of all tax laws. So long as there be a fair and substantial compliance by the States and their officials with the Revised Statutes, these inequalities or difficulties of adjustment or misjudgments in administration cannot make the State Tax Law unconstitutional. We do well not to refine our law, whether Federal or State, to such a point that it cannot and will not work.

For these reasons I believe that the Tax Commission has the power and the right under the Constitution to determine within the definitions given by the United States Supreme Court as above stated what moneyed capital comes in competition with National banks and to tax it accordingly. There will always be questions of fact upon these matters, and perhaps questions of law which can and must be reviewed by the courts. In the main they will tax in the performance of their duties the substantial part of such capital, and the activities of National banks will not suffer from any substantial untaxed competition. On the other hand, other moneyed

capital will not escape its proper taxation by hiding under the skirts of National banks.

For these reasons I think all the orders appealed from should be affirmed.

CARDOZO, POUND and MCLAUGHLIN, JJ., concur with HISCOCK, Ch. J.; CRANE, J., concurs in memorandum; ANDREWS and LEHMAN, JJ., dissent.

Order affirmed.